THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDERICK CHILDS, Defendant-Appellant.

Fourth District   No. 4—91—0402

Opinion filed February 28, 1992.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

After a jury trial, defendant was convicted of possession of a controlled substance (cocaine) weighing more than 1 gram but less than 15 grams (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b)) and possession of less than 2.5 grams of cannabis (Ill. Rev. Stat. 1989, ch. 56½, par. 704(a)). The trial court sentenced defendant to 3 years in prison on the controlled substance conviction and 60 days in jail on the cannabis conviction, with the sentences to run concurrently. The trial court also imposed a $740 street value fine on defendant. Defendant appeals, arguing that (1) the trial court erred in refusing to suppress evidence found in defendant's car, (2) the trial court erred in instructing the jury, and (3) defendant should receive $5 *per diem* credit toward his fine for the time he served in jail while awaiting trial.

We affirm and remand.

## I. FACTS

On October 18, 1989, at approximately 7:15 p.m., Officer Dan Hoeniges of the Bloomington police department saw a car with dealer license plates commit several minor traffic violations. Hoeniges activated his mars lights and pulled the car over. The car came to a stop near an intersection in a residential area. Defendant got out of the driver's side of the car and started walking away from Hoeniges' police car. While still seated in his police car, Hoeniges told defendant to stop. Defendant replied that he wanted to speak to a friend of his in a nearby house and kept walking. Defendant acted as if he did not know Hoeniges had pulled over the car defendant was driving. Hoeniges then saw another man exit the passenger side of the car and flee between two houses.

Hoeniges radioed for assistance. He then got out of his car, at which time defendant started to run. Hoeniges chased defendant on foot through the neighborhood, weaving through several backyards. Eventually, defendant fell while crossing a fence, and Hoeniges caught him. Hoeniges arrested defendant and escorted him back to the police car. Sergeant Joe Butcher had already arrived at the scene, and he took defendant to the Bloomington police station.

Soon thereafter, Officer Paul Williams arrived at the scene. Hoeniges and Williams radioed for a tow truck and proceeded to

search the car. Williams found a plastic cup containing a liquid that smelled like alcohol, a portable police scanner, a bag containing eight unopened cans of beer, and a shoe box containing plastic baggies, scissors, and a razor.

Hoeniges retraced the path along which he had chased defendant and found two baggies within 3 feet of each other about 30 feet from the fence where defendant had fallen. Hoeniges had not seen defendant drop anything during the chase through the dimly lit area. At trial, an expert testified that one bag contained 16 smaller bags while the other contained 10 smaller bags. All of these smaller bags together contained a total of 6.2 grams of cocaine.

Meanwhile, when Butcher searched defendant at the police station, he found a baggie with a green leafy substance inside. The same expert who testified about the cocaine also testified that this baggie contained .5 grams of marijuana.

The State charged defendant with possession of a controlled substance (cocaine) weighing more than 1 gram but not more than 15 grams with intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)(2)) and possession of cannabis (Ill. Rev. Stat. 1989, ch. 56½, par. 704(a)). Prior to trial, defendant moved to suppress the evidence found in his car. The trial court denied defendant's motion regarding the items found in the passenger compartment of the car, holding that defendant had abandoned any privacy interest in the car by fleeing from Hoeniges. However, the trial court did suppress certain items the police found in the trunk of the car. The propriety of that ruling is not before us in this appeal.

After the presentation of evidence, the court instructed the jury on the two charges brought by the State and (as defendant requested) on the lesser included offense of possession of a controlled substance weighing more than 1 gram but less than 15 grams (without the intent to deliver). The jury acquitted defendant of possession of a controlled substance with intent to deliver, but convicted him of the lesser included offense of possession of a controlled substance weighing more than 1 gram but less than 15 grams and of possession of cannabis.

## II. Analysis

### A. *The Motion To Suppress*

■ Defendant first argues that the trial court should have suppressed the physical evidence found in the car he had been driving. Citing a treatise (1 W. LaFave, Search & Seizure §2.5(a), at 447 (2d

ed. 1987) (hereinafter LaFave)), the trial court denied defendant's motion to suppress, holding that the police did not need a warrant to search the car because defendant had abandoned his vehicle in an attempt to flee from the police. We agree.

In *People v. Washington* (1980), 90 Ill. App. 3d 631, 640-41, 413 N.E.2d 170, 177, the court addressed the same argument and wrote the following:

"According to the testimony of the defendant, as well as other witnesses, he abandoned the car on the street and fled the scene after the robbery, leaving the car unlocked and with the keys in it. At that point we can see no legitimate interest, possessory or otherwise, which the defendant had in the car and, of course, he certainly had no expectation of privacy in an unlocked, abandoned auto, with the ignition key still in it."

In *People v. Hoskins* (1984), 101 Ill. 2d 209, 212, 461 N.E.2d 941, 942, when the undercover police officers told defendant she was under arrest for prostitution, she ran from the officers and either threw her purse to the ground or dropped it as she fled. The police retrieved her purse, searched it, and found cocaine. (*Hoskins*, 101 Ill. 2d at 212, 461 N.E.2d at 942.) Defendant made a motion to suppress that evidence, the circuit court granted the motion, the appellate court affirmed, and the supreme court reversed. (*Hoskins*, 101 Ill. 2d at 211-12, 461 N.E.2d at 942.) The supreme court explained its decision as follows:

"The defendant either dropped or threw her purse to the ground as she fled from the police officers. In either event it can be said that she abandoned it. If dropped unintentionally, she made no effort to pick it up. She obviously intended to flee and escape and not return for the purse. The intent at that time was to abandon it. *** Certainly the defendant did not retain, but rather gave up, any expectation of privacy in the purse and its contents. She could not have an expectation that a purse lying in a public street would not be picked up and examined." *Hoskins*, 101 Ill. 2d at 219-20, 461 N.E.2d at 946.

Defendant attempts to distinguish *Washington* by claiming that he did not immediately flee from the car, but instead casually got out of the car not knowing that Hoeniges had stopped him. Defendant asserts that only after he had walked away from the car did he begin to flee from Hoeniges. Thus, defendant argues, his flight did not demonstrate any intent to abandon the car. We are unpersuaded.

It was dark out when Hoeniges used the mars lights on his police car to pull over the car defendant was driving. When defendant got

out of the car and started walking away, he disregarded Hoeniges' order to stop. We also note that in his hurry to get out of the car, defendant left the car keys in the ignition. Notwithstanding defendant's initial playacting, the evidence demonstrates that defendant intended to flee from the car (and from the police who had stopped him) from the moment he got out of the car.

We find pertinent the following discussion regarding vehicle abandonment by Professor LaFave:

"Courts have also found cars to be abandoned when it appeared that the operator of the vehicle left the car behind in an effort to avoid apprehension by the police. Sometimes the car had actually been pursued by the police for some distance, after which the driver jumped from the car and fled on foot. On other occasions the vehicle was parked when the occupant, upon seeing the police approach, exited the vehicle and took flight." 1 LaFave, §2.5(a), at 447.

We will not reverse a trial court's ruling on a motion to suppress unless it is manifestly erroneous. (*People v. Redd* (1990), 135 Ill. 2d 252, 289, 553 N.E.2d 316, 332.) Based on the foregoing, we certainly cannot say that the trial court's ruling that defendant abandoned the car was manifestly erroneous. Accordingly, the trial court properly denied defendant's motion to suppress the evidence found in the vehicle.

### B. *Jury Instructions*

Defendant next argues that the trial court erred when it instructed the jury. First, defendant argues that the court erred by using an outdated version of Illinois Pattern Jury Instructions, Criminal, Nos. 2.01 and 26.01. (Illinois Pattern Jury Instructions, Criminal, Nos. 2.01, 26.01 (2d ed. 1981) (hereinafter IPI Criminal 2d).) Second, defendant argues that the trial court failed to properly instruct the jury on the definition of possession. Third, defendant argues that the court erred by submitting a corrected written verdict form to the jury when the court discovered that the verdict form it had previously read to the jury was defective. Because defendant raised no objection at trial regarding any of these alleged errors, he has waived all of these issues on appeal unless he can show that the alleged errors constitute plain error. See *People v. Smith* (1991), 209 Ill. App. 3d 1043, 1055-56, 568 N.E.2d 482, 489-90.

### 1. Using Outdated IPI Jury Instructions

The trial court used IPI Criminal 2d Nos. 2.01 and 26.01 in instructing the jury. Although newer instructions from the 1989 supple-

ment to IPI Criminal 2d were available, neither party submitted a version of new instructions 2.01R or 26.01R contained in the 1989 supplement that would have been applicable to this case. (See Illinois Pattern Jury Instructions, Criminal, Nos. 2.01R, 26.01R, at 43-44, 369-70 (2d ed. Supp. 1989).) As a result, the trial court used the old versions of those instructions, namely, IPI Criminal 2d Nos. 2.01 and 26.01.

■ In *People v. Tucker* (1990), 193 Ill. App. 3d 849, 854, 550 N.E.2d 581, 584, this court held that "use by a trial court of an earlier IPI version of [an] instruction is not reversible error as long as the earlier version still correctly states the law." Although we agree with the IPI Criminal Committee that the new Nos. 2.01 and 26.01 instruction series contained in the 1989 supplement (see Illinois Pattern Jury Instructions, Criminal, Nos. 2.01A through 2.01AA, 26.01A through 26.01AA (2d ed. Supp. 1989)) improve the charging and concluding instructions, the former instructions were not incorrect. However, Supreme Court Rule 451 (134 Ill. 2d R. 451) required the trial court to use the new instructions regardless of why the IPI Criminal Committee promulgated them, and its failure to do so was error. Nonetheless, on this record we conclude that this error does not require reversal and falls far short of constituting plain error.

We also note that not only did defendant fail to object to this alleged error, but he actually submitted the old versions of instruction Nos. 2.01 and 26.01 for the court to use. In *People v. Pardieck* (1990), 198 Ill. App. 3d 432, 555 N.E.2d 1132, defendant argued that the trial court erred by using an instruction tendered by the defendant. In response, the court held that it would "not let a defendant create a condition [at trial] and then claim error [on appeal]." (*Pardieck*, 198 Ill. App. 3d at 434, 555 N.E.2d at 1133.) We agree with *Pardieck* that a defendant may not claim error based on an instruction given to the jury that defendant tendered to the court.

### 2. Defining Possession

Defendant next claims that the trial court erred in not instructing the jury on the definition of "possession." (See IPI Criminal 2d No. 4.16.) Again, because defendant failed to raise this objection at trial, we must resolve whether this omission, if error at all, constituted plain error.

■ Although Hoeniges did not find the cocaine on defendant's person, he did find it in a place (along the path where he pursued defendant) that did not raise any issue as to whether defendant constructively or jointly possessed the cocaine. Instead, the question for

the jury was whether defendant had possessed the cocaine and discarded it as he ran.

Although the committee note to IPI Criminal 2d No. 17.12, defining possession of controlled substances, states that IPI Criminal 2d No. 4.16 should be given to the jury (IPI Criminal 2d No. 17.12, Committee Note, at 375), neither party requested the court to do so in the present case. On the record before us, we conclude that the failure of the trial court to give IPI Criminal 2d No. 4.16 *sua sponte* was not error, much less plain error.

### 3. Correcting the Verdict Form to Include
#### "With the Intent to Deliver"

Defendant next claims that the trial court erred when it corrected the verdict form for guilty of possession of a controlled substance with the intent to deliver. The verdict form the court originally submitted to the jury failed to include the intent to deliver element. Defendant failed to call this error to the judge's attention before the instructions were read to the jury. As the judge read the verdict form to the jury, he noticed the error and called the matter to both parties' attention immediately after he sent the jury out.

The judge corrected the instruction by writing the words "with the intent to deliver" in the appropriate place on the verdict form and sending a copy of the corrected instruction to the jury. The judge asked defense counsel if he objected to this action, and defense counsel replied that he did not. Thus, as with the other claimed instructional errors, we will only reverse if this alleged error constituted plain error.

■ We note that this omission occurred only on the verdict form, not on the definitional or the issues instructions, both of which did contain the phrase "with the intent to deliver." Furthermore, the jury did not convict defendant of the offense to which the missing element related; instead, the jury convicted defendant of mere possession of a controlled substance, not possession with the intent to deliver. Under all of these circumstances, we hold that the trial court committed no error in its handling of the matter.

### C. *Per Diem Credit for Time Served in Pretrial Custody*

■ Last, defendant argues that the trial court should have given him $5-per-day credit toward the fines the court imposed for the time he spent in pretrial custody. (See Ill. Rev. Stat. 1989, ch. 38, par. 110—14.) Although defendant did not raise this issue before the trial court, he has not waived it on appeal because he did not receive the

statutorily required written notice upon conviction of the provisions of section 110—14. (See *People v. Joseph* (1988), 176 Ill. App. 3d 636, 642, 531 N.E.2d 432, 435-36.) The State concedes that the defendant should receive this credit, and we agree. Accordingly, we remand this matter to the trial court with directions to award the appropriate $5-per-day credit.

### III. CONCLUSION

For the reasons stated, we affirm defendant's conviction but remand to the trial court with directions to amend the sentencing order as indicated.

Affirmed and remanded.

McCULLOUGH and LUND, JJ., concur.