THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROLANDO ESTRADA, Defendant-Appellee.

First District (5th Division)  No. 1—08—2909

Opinion filed August 28, 2009.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Marie Quinlivan Czech, and Anthony L. Kenney, Assistant State's Attorneys, of counsel), for the People.

Pablo Decastro, of Rascia & Decastro, Ltd., of Chicago, for appellee.

JUSTICE TOOMIN delivered the opinion of the court:

In this appeal we confront the validity of a warrantless search of a lawfully parked and locked vehicle where its recent occupant is seized outside the vehicle in the absence of any articulable basis. In the proceedings below, the court granted defendant's motion to quash his arrest and suppress the evidence derived therefrom. The State now appeals contending the court erred in finding the arresting officer did not have a reasonable suspicion sufficient to warrant an investigatory stop. Additionally, the State contends that the exclusionary rule should not apply in this case. For the reasons that follow, we affirm the order of the circuit court.

## BACKGROUND

In the case *sub judice*, defendant was charged with possession of a controlled substance with intent to deliver after cocaine was seized from his car. Defendant moved to quash his arrest and suppress the evidence. Following a hearing, the trial court granted the motion and ordered suppression of the evidence. Thereafter, the State filed a certificate of substantial impairment pursuant to Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)) and a notice of appeal. We now consider whether the trial court's order suppressing the evidence was proper based upon the facts adduced at the hearing and in conformity with fourth amendment jurisprudence.

Chicago police officer Jason Cloherty, a five-year police veteran, was the lone witness to testify at the hearing on the motion. Cloherty was a member of the 25th District tactical team. On May 22, 2008, he was on patrol, riding in the passenger seat of an unmarked tactical unit vehicle. He was not in a Chicago police uniform, but was wearing his badge, a duty belt, and a bulletproof vest. Officer Cloherty and his partner were traveling westbound on Dickens Avenue as they approached Lavergne Avenue, a street running one-way southbound. Cloherty initially saw defendant sitting in the driver's seat of a dark-colored sport utility vehicle talking to an individual standing in the parkway on the driver's side of the vehicle. This vehicle was the first one parked on the east side of Lavergne, north of Dickens.[1] He could not see if there were any other passengers in the vehicle with defendant.

---

[1] Though it is not explicitly stated in the record, it would appear defendant's vehicle was parked on the east side of Lavergne. This necessarily assumes Officer Cloherty's use of the term "parkway" refers to that space between the curb and the sidewalk.

Officer Cloherty and his partner turned right onto Lavergne Avenue heading northbound, proceeding the wrong way down a one-way street. Defendant's car was 20 feet or possibly two car lengths away from Cloherty's unit. As Cloherty and his partner turned the corner, he "observed the defendant place a bag over with his right hand over the passenger seat of the vehicle placing it in the rear seat of the floor, I wasn't sure." He described the bag as a white plastic bag like one "you would see at Jewel." Defendant held the bag, which appeared to possibly be knotted, by its top.

On direct examination, Officer Cloherty indicated that by the time his unit pulled up, defendant had exited the vehicle and was near the rear of the car. Defendant's vehicle was already closed and locked when Cloherty asked defendant to stop and talk. On cross-examination, Officer Cloherty described the events as follows: "We stopped our vehicle, had the defendant turn off his vehicle and exit his vehicle to the rear, I exited my vehicle and met the defendant in the rear of his vehicle." According to this account, Cloherty's unit stopped front bumper to front bumper with defendant's vehicle or "not head-on, but *** askew." He could hear defendant's engine running when they pulled up.

Officer Cloherty did not believe the unit's emergency equipment was activated, but he was not sure. As Cloherty exited his unit to approach defendant, he noticed that defendant's vehicle did not have a City of Chicago vehicle sticker displayed on the windshield. He then walked in the street from his unit and met defendant at the rear of defendant's vehicle.

Cloherty asked defendant for a driver's license and proof of insurance. According to the officer, defendant "stated that he had some problems with his license." Consequently, Cloherty instructed defendant to place his hands on the front of the unmarked unit. The officer then went to run defendant's name through the police computer and defendant fled as Cloherty was typing his name into the computer. Cloherty's partner gave chase and apprehended defendant.

On cross-examination, the initial encounter with defendant was described differently. Officer Cloherty indicated that he approached defendant and asked him only about the city sticker as well as the ownership of the car. Defendant responded that the car was his girlfriend's. When asked about his license, "he stated that he had problems with his license" and did not provide a license or proof of insurance. Officer Cloherty did not ask defendant about the individual he was seen speaking to initially. Defendant then accompanied Cloherty to the front of the unmarked unit and was, at that point, being detained while they investigated the status of his license. While

Cloherty checked defendant's license status, defendant fled. Thereafter, he was taken into custody for driving on a revoked license and for fleeing the scene.

According to Officer Cloherty, approximately one minute passed from the time defendant was first observed until the point where Cloherty met him at the rear of defendant's vehicle. The officer believed, based on his observations, that he and his partner "were walking into a narcotics transaction." He conceded that he did not stop to talk to defendant about the absent city sticker. Instead, he wanted to determine what was going on with defendant and the other individual they had observed. He had a suspicion about the bag and wanted to search the car in order to confirm that suspicion.

On examination by the trial court, Officer Cloherty stated that defendant's vehicle was legally parked on the street. He was unable to run the vehicle's plates before defendant fled, so all he knew was that defendant said the vehicle was his girlfriend's. Additionally, Cloherty indicated that the vehicle defendant was seen in was not under surveillance for any other reason.

After defendant was apprehended and placed in custody a warrantless search of the vehicle was conducted by Officer Cloherty with the assistance of officers from the gang team. The officers subsequently found a quantity of cocaine in the vehicle. The cocaine was discovered in a Target bag in the passenger side of the backseat. According to Cloherty, the vehicle was searched preliminary to a tow because the defendant had neither a license nor insurance, and as such it was an inventory search. Additionally, according to Officer Cloherty, defendant made incriminating statements about the recovered cocaine after he was placed under arrest.

Following argument, the trial court issued its findings. According to the court, Officer Cloherty was credible in his account of the events. Moreover, what Cloherty saw was "neutral conduct" when he observed defendant moving a sealed bag from one part of the vehicle to another. There was, "No other reason to believe that this may have been drugs other than a hunch by the police officer." The trial court also noted that only those vehicles registered in the City of Chicago are required to display city stickers. Therefore, the court was unsure how the officer could have thought this was even a possible violation without knowing the registered owner of the vehicle and the address of such registration. Nevertheless, "[H]e stopped this person with a legally parked car under color of law he demanded the identification and licenses and other things." All of this was done because he was "curious and wanted to see what was in the bag because he had a hunch about that."

The trial judge noted that the city sticker violation would require only a ticket that need not be given to the driver personally and could be left on the windshield. Thereafter, it became a traffic matter in terms of defendant driving without a license. Additionally, "Even if that is a custodial event, I have a car legally parked, don't even know that the car is his, I don't see any necessity to tow the car and make an inventory search from it." The car was legally parked and, as far as Officer Cloherty knew from defendant, the car belonged to someone else. Therefore, there was "no manifest necessity to tow that car and do an inventory search of it." The trial court concluded by observing, "The police officer was candid enough to admit that he had some suspicions. In [sic] fact his suspicions turned out to be right doesn't mean that he was able to articulate them for purposes of this motion."

The trial court allowed the motion to suppress. The State filed a motion for reconsideration. In denying the State's motion, the trial court recited the points relied upon in granting the motion to suppress, highlighting Officer Cloherty's testimony about the city sticker. In turn, the State filed a certificate of impairment based on the suppression of the evidence as well as a notice of appeal. This appeal followed.

## ANALYSIS

We review rulings on motions to suppress in accordance with the two-part standard articulated in *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996), providing that findings of historical fact are viewed for clear error with reviewing courts affording due weight to any inferences drawn therefrom by the trial court and the ultimate legal ruling concerning suppression is reviewed *de novo*. We afford great deference to factual findings and will not reverse them unless they are contrary to the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542, 857 N.E.2d 187, 195 (2006). "This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." *People v. Jones*, 215 Ill. 2d 261, 268, 830 N.E.2d 541, 548 (2005). A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *People v. Beverly*, 364 Ill. App. 3d 361, 368, 845 N.E.2d 962, 969 (2006). Nevertheless, we as a reviewing court are free to assess the facts along with the issues raised in order to draw conclusions when determining appropriate relief. *Luedemann*, 222 Ill. 2d at 542, 857 N.E.2d at 195.

The fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6) protect individuals from unreasonable searches and seizures. See *People v. Rosenberg*, 213 Ill. 2d 69, 77, 820 N.E.2d 440, 446 (2004). The constitutional requirement of reasonableness applies equally to traffic stops as to other types of seizures. *Jones*, 215 Ill. 2d at 270, 830 N.E.2d at 549.

■ Manifestly, a seizure does not occur as a result of every interaction between a private citizen and a police officer. *Luedemann*, 222 Ill. 2d at 544, 857 N.E.2d at 196. Instead, "A person is seized when, by means of physical force or a show of authority, the person's freedom of movement is restrained." *People v. Cosby*, 231 Ill. 2d 262, 273, 898 N.E.2d 603, 611 (2008), citing *United States v. Mendenhall*, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). Established precedent has created a three-tier structure for evaluating encounters between the police and private citizens, as follows:

> "(1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or 'Terry stops,' which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and thus do not implicate fourth amendment interests." *Luedemann*, 222 Ill. 2d at 544, 857 N.E.2d at 196.

Searches and seizures generally require warrants issued based upon probable cause; yet, law enforcement officers are permitted to make warrantless investigatory vehicle stops where the officer "can point to specific, articulable facts that, when combined with rational inferences derived therefrom, create reasonable suspicion that the person seized has committed or is about to commit a crime." *Beverly*, 364 Ill. App. 3d at 368, 845 N.E.2d at 969, citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968); see also 725 ILCS 5/107—14 (West 2006) ("A peace officer *** may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense ***").

Precedent dictates that the facts forming the basis of reasonable suspicion need not rise to the level of probable cause and do not require an officer to actually witness a violation. *People v. Richardson*, 376 Ill. App. 3d 612, 625, 876 N.E.2d 303, 314 (2007). Likewise, it is permissible for police to perform a computer check of a vehicle's license plate or registration without having observed any traffic infraction. *People v. Brand*, 71 Ill. App. 3d 698, 699, 390 N.E.2d 65, 67 (1979). Yet, a *"Terry* investigative detention cannot be justified *** on the basis of 'unparticularized suspicion' or on a 'hunch.' " *People v.*

*Gherna*, 203 Ill. 2d 165, 181, 784 N.E.2d 799, 808-09 (2003), quoting *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. As the court in *Beverly* explained:

"We objectively consider whether a stop was proper, looking at the facts available to the officer at the time of the seizure to determine whether his or her actions were appropriate. *Luedemann*, 357 Ill. App. 3d at 420. The situation encountered by the officer must be so far from the ordinary that any competent officer would be expected to act quickly." *Beverly*, 364 Ill. App. 3d at 369, 845 N.E.2d at 969.

It is therefore well established that police officers who observe the commission of a traffic violation are justified in initiating a brief detention of the driver to investigate. *People v. Sorenson*, 196 Ill. 2d 425, 433, 752 N.E.2d 1078, 1084 (2001); see also *Whren v. United States*, 517 U.S. 806, 810, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"). The facts need not be viewed with analytical hindsight, but rather should be considered from the perspective of a reasonable officer at the time that the situation confronted him. *People v. Frazier*, 248 Ill. App. 3d 6, 14, 617 N.E.2d 826, 833 (1993).

Because traffic stops more closely resemble the investigatory stops upheld in *Terry* (*Knowles v. Iowa*, 525 U.S. 113, 117, 142 L. Ed. 2d 492, 498, 119 S. Ct. 484, 488 (1998)), they are generally analyzed in light of the principles of reasonableness set out in *Terry*. See *Jones*, 215 Ill. 2d at 270, 830 N.E.2d at 549; see also *People v. Johnson*, 379 Ill. App. 3d 710, 712, 885 N.E.2d 358, 360 (2008). "To satisfy the reasonableness requirement of the fourth amendment, a police officer conducting a search or seizure under an exception to the warrant requirement need not always be correct but must always be reasonable." *People v. Cole*, 369 Ill. App. 3d 960, 967, 874 N.E.2d 81, 88 (2007). Hence, officers may draw upon their skills, training, and experience to draw inferences or make deductions based upon their observations that others might not be able to make. *United States v. Arvizu*, 534 U.S. 266, 273, 151 L. Ed. 2d 740, 749-50, 122 S. Ct. 744, 750-51 (2002).

We further recognize that *Terry* and its progeny require that "the police officer's action in initiating the stop must be justified." *People v. Matthews*, 357 Ill. App. 3d 1062, 1067, 831 N.E.2d 627, 631 (2005); see also *Cosby*, 231 Ill. 2d at 274, 898 N.E.2d at 611 ("Nonetheless, this court and many other courts have analyzed traffic stops under *Terry* principles, regardless of whether the initial stop was supported by probable cause or reasonable suspicion"). Moreover, the validity of a given stop is a distinct question from that of the validity of any subsequent search. *Sorenson*, 196 Ill. 2d at 433, 752 N.E.2d at 1084.

In *Luedemann*, the supreme court examined an encounter between a police officer and an individual in a parked automobile. There, the court reasoned that the proper test to evaluate the nature of the seizure turned upon "whether a reasonable person in defendant's position would have believed he was free to decline [the officer's] requests or otherwise terminate the encounter." *Luedemann*, 222 Ill. 2d at 551, 857 N.E.2d at 200. Importantly, a seizure is not said to occur when a police officer approaches and asks a person a question, if he or she is willing to listen. *Luedemann*, 222 Ill. 2d at 551, 857 N.E.2d at 200. Accordingly:

> "[A]ny analysis of such a situation must begin with the recognition that the police may approach a person seated in a parked vehicle and ask questions of that person without that encounter being labeled a seizure. The encounter becomes a seizure only if the officer, through physical force or a show of authority, restrains the liberty of the vehicle's occupant." *Luedemann*, 222 Ill. 2d at 552-53, 857 N.E.2d at 201.

The *Luedemann* court delineated several factors tending to indicate a seizure, including " 'boxing the car in, approaching it on all sides by many officers, pointing a gun at the suspect and ordering him to place his hands on the steering wheel, or use of flashing lights as a show of authority.' " *Luedemann*, 222 Ill. 2d at 557, 857 N.E.2d at 204, quoting 4 W. LaFave, Search & Seizure §9.4(a), at 434-35 (4th ed. 2004).

The thrust of the State's argument here is that Officer Cloherty had a reasonable suspicion that defendant was in the midst of a narcotics transaction. The State gleans support from the fact that defendant was seated in a vehicle with the engine running, engaged in a "brief conversation with a man standing near the driver's side of the vehicle," and then "attempted to conceal a white plastic bag by removing it from the front seat and placing it on the floor of the rear passenger seat." The State posits that, in light of the foregoing circumstances as well as Officer Cloherty's assignment and training, there existed a reasonable and articulable suspicion to support a *Terry* stop of defendant. We disagree. The State further maintains that, in addition to Cloherty's initial observations, the revelation that defendant's vehicle lacked a city sticker provided "further suspicion to investigate." However, we are not persuaded that this additional factor in any measure alters our initial disagreement with the State's position.

The State relies on *Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979), in support of Officer Cloherty's actions. In *Prouse*, the Supreme Court ruled that it was generally unreasonable to stop a vehicle and detain its driver in order to check the driver's

license status or the registration of the vehicle. *Prouse*, 440 U.S. at 663, 59 L. Ed. 2d at 673, 99 S. Ct. at 1401. However, exceptions existed in cases "in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." *Prouse*, 440 U.S. at 663, 59 L. Ed. 2d at 673, 99 S. Ct. at 1401.

The unmistakable implication of *Prouse* is that the necessary quantum of suspicion must exist prior to the stop or detention. Here, the State contends that "by not having a city sticker, the vehicle may have been unregistered." Yet, Officer Cloherty's testimony makes clear that his observation regarding the city sticker did not occur until after Cloherty's unit turned onto Lavergne and he exited the unit and began to approach defendant. To adopt the State's approach would require us to find that *Prouse* intended to allow the reasonable and articulable suspicion to be established and developed after the commencement of the encounter between a police officer and an individual. This is clearly not the law, but, rather, is contradicted by the well-established precedent in this area. See *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *Beverly*, 364 Ill. App. 3d at 369, 845 N.E.2d at 969.

■ The State's reliance on *People v. Johnson*, 74 Ill. App. 3d 1037, 393 N.E.2d 40 (1979), is likewise misplaced. There, the testimony was that the police officers observed the absence of a city sticker and accordingly determined to effectuate a stop of the vehicle. When they attempted to do so, the vehicle fled. The absence of the city sticker afforded the officers a reasonable basis to curb the vehicle for further investigation, whereupon the vehicle's flight, in turn, provided probable cause to arrest. *Johnson*, 74 Ill. App. 3d at 1044-45, 393 N.E.2d at 45-46. By attempting to analogize *Johnson* to the case *sub judice*, the State again runs afoul of the concept of timing. The basis for the stop must exist prior to the stop and cannot arise after the fact or be judged in hindsight. See *Frazier*, 248 Ill. App. 3d at 14, 617 N.E.2d at 833; *Beverly*, 364 Ill. App. 3d at 369, 845 N.E.2d at 969.

■ As noted, Officer Cloherty's proffered basis for the stop—exclusive of his conceded suspicions about defendant—was developed after his unit turned onto the one-way street against the flow of traffic, pulled head-on with defendant's car, and began to approach defendant and ask him questions. We agree with the trial court's observations that the ultimate correctness of the officer's suspicions or hunch does not excuse the absence of a reasonable and articulable suspicion to support the stop. We likewise agree that what he did observe was neutral conduct wholly insufficient to justify the stop. See

*People v. Ocampo*, 377 Ill. App. 3d 150, 162, 879 N.E.2d 353, 363 (2007) ("Though defendant's movements may have been consistent with a drug transaction, they were also consistent with any number of other scenarios").

Moreover, the absence of the city sticker adds nothing to the State's position given the timing of that observation under the circumstances. Thus, we find appropriate the trial court's observation that the absence of the city sticker, if the vehicle was, in fact, registered in the City of Chicago, would only necessitate the issuance of a ticket on the vehicle and would not require the driver to be stopped personally. Furthermore, the State's position, illustrated by this statement in its brief, "Officer Cloherty had additional grounds to stop defendant when defendant fled," is similarly unavailing. As noted, the reasonable and articulable suspicion to commence the encounter must necessarily exist before the encounter. Here, given that there was no reasonable or articulable suspicion to support the encounter *ab initio*, all that followed was tainted by that illegality. See *People v. Brownlee*, 186 Ill. 2d 501, 518, 713 N.E.2d 556, 564-65 (1999) ("Once an illegal seizure has occurred, that illegality may infect and taint the fruits that subsequently resulted"), citing *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *People v. Kipfer*, 356 Ill. App. 3d 132, 824 N.E.2d 1246 (2005) (trial court erred by not suppressing cocaine seized from defendant who was stopped while walking through a parking lot at 3:40 a.m. where reasonable articulable suspicion was absent).

In furtherance of its position, the State additionally cites *People v. Thomas*, 198 Ill. 2d 103, 759 N.E.2d 899 (2001). However, *Thomas* addressed the issue of how "[u]nprovoked flight in the face of a *potential* encounter with police may raise enough suspicion to justify the ensuing pursuit and investigatory stop." (Emphasis added.) *Thomas*, 198 Ill. 2d at 113, 759 N.E.2d at 904-05, citing *Illinois v. Wardlow*, 528 U.S. 119, 124-25, 145 L. Ed. 2d 570, 576-77, 120 S. Ct. 673, 676-77 (2000). Here, to the contrary, the encounter with the police was anything but potential. It was actual. Had defendant fled upon his initial viewing of Officer Cloherty, rather than after the encounter started, the *Thomas* analysis might well obtain. Yet, given that this is not how the encounter took place, *Thomas* is inapposite.

The State also attempts to justify the initial stop asserting that Officer Cloherty had probable cause to arrest defendant after observing him in "actual physical control" of the vehicle coupled with defendant's admission that "he had issues with his driver's license." As with the State's other efforts to salvage the stop, this fact does not change the nature of the encounter. Officer Cloherty did not know

defendant's identity on the initial approach nor did he know anything regarding the status of his licensure. Moreover, he could not have known that defendant was violating the law by being in "actual physical control" of the vehicle when his license was either revoked or suspended. The facts necessary to establish that knowledge were not developed until the encounter was already underway. In support of this position, the State directs our attention to *Atwater v. City of Lago Vista*, 532 U.S. 318, 149 L. Ed. 2d 549, 121 S. Ct. 1536 (2001).

Here again, the State invites us to find the stop was permissible when viewed from the redeeming perspective of hindsight. We decline the invitation. In our view, subsequent discoveries or justifications are not sufficient to resuscitate an encounter that lacked justification at the outset. See *Matthews*, 357 Ill. App. 3d at 1067, 831 N.E.2d at 631 (holding that it is the initiation of the stop that must be justified). Likewise, *Atwater* is readily distinguishable as it involved an on-sight stop of a vehicle for a seatbelt violation. In the case at bar, Officer Cloherty did not observe any violation or criminal activity. Consequently, the State's efforts to justify the search of defendant's vehicle on the authority of *Atwater* is unavailing. We therefore find that the trial court's factual determinations were not against the manifest weight of the evidence. See *Luedemann*, 222 Ill. 2d at 542, 857 N.E.2d at 195.

Notably, even if we were to find there was a reasonable articulable suspicion to support the initial detention, we, nonetheless, would find no reason to disturb the trial court's suppression order. Support for this conclusion emanates from the recent pronouncement of the Supreme Court in *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d 485, 129 S. Ct. 1710 (2009), providing timely insight into the search-incident doctrine. As will be demonstrated, the factual similarities between *Gant* and the case *sub judice* lend support to our conclusion.

Before examining *Gant*, a review of its predecessor case law is in order. The modern progression of the search-incident doctrine finds its roots in *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). There, police officers went to the Chimel home with an arrest warrant for him, but without a search warrant. He was placed under arrest when he arrived home. Thereafter, one of the officers sought permission to " 'look around' " the home, and although defendant objected, he was told the officers could search on the basis of the arrest. In turn, the police searched the entire home, paying more attention to some parts over others, and seized several items. The items seized were potentially evidence of the burglary of a coin shop for which the defendant was arrested. The items were admitted at trial over defendant's objection. He was convicted and his conviction was affirmed on direct appeal. *Chimel*, 395 U.S. at 753-54, 23 L. Ed. 2d at 688, 89 S. Ct. at 2035.

Following the grant of *certiorari*, the Supreme Court concluded the search of the entire home was unlawful. The Court reached this conclusion mindful of issues of police officer safety and the potential for destruction of evidence. *Chimel*, 395 U.S. at 763, 23 L. Ed. 2d at 694, 89 S. Ct. at 2040. The search in *Chimel* "went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him." *Chimel*, 395 U.S. at 768, 23 L. Ed. 2d at 697, 89 S. Ct. at 2043. To effect a search of the extent undertaken the police officers had to have a warrant; since they did not have one, the search was unreasonable. *Chimel*, 395 U.S. at 768, 23 L. Ed. 2d at 697, 89 S. Ct. at 2043.

Thereafter in *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022, 2032 (1971), the Court considered the warrantless seizure and search of a defendant's car in the wake of his arrest. Because the events took place prior to *Chimel*, the Court evaluated the situation based upon pre-*Chimel* precedents. *Coolidge*, 403 U.S. at 455-56, 29 L. Ed. 2d at 576-77, 91 S. Ct. at 2032.

In *Coolidge*, the search of the vehicle took place after the defendant was placed under arrest in his home for a murder and removed from the location by police. The vehicle, which had been parked in the driveway, was taken to the police station and searched two days after the defendant's arrest. *Coolidge*, 403 U.S. at 456, 29 L. Ed. 2d at 577, 91 S. Ct. at 2032-33. The Court concluded that under the facts of *Coolidge*, "Search-incident doctrine, in short, has no applicability to this case." *Coolidge*, 403 U.S. at 457, 29 L. Ed. 2d at 578, 91 S. Ct. at 2033. The so-called "automobile exception" was likewise dispensed as "simply irrelevant" because the facts did not present a situation where it was not practical for police to obtain a warrant to search the defendant's car. *Coolidge*, 403 U.S. at 462, 29 L. Ed. 2d at 580, 91 S. Ct. at 2036. Additionally, the Court held the "plain view" doctrine was not supportive of the search and observed:

"The police had ample opportunity to obtain a valid warrant; they knew the automobile's exact description and location well in advance; they intended to seize it when they came upon Coolidge's property. And this is not a case involving contraband or stolen goods or objects dangerous in themselves." *Coolidge*, 403 U.S. at 472, 29 L. Ed. 2d at 586-87, 91 S. Ct. at 2041.

The Court in *Coolidge* summarized the principle espoused by its opinion as holding "that the police must obtain a warrant when they intend to seize an object outside the scope of a valid search incident to arrest." *Coolidge*, 403 U.S. at 484, 29 L. Ed. 2d at 593, 91 S. Ct. at 2047. Moreover, "It is a principle that should work to protect the

citizen without overburdening the police, and a principle that preserves and protects the guarantees of the Fourth Amendment." *Coolidge*, 403 U.S. at 484, 29 L. Ed. 2d at 593, 91 S. Ct. at 2047.

Ten years later, the Court considered the constitutionality of a warrantless search of the passenger compartment of a vehicle in *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981). *Belton* involved a traffic stop on the New York Thruway of a vehicle with four occupants. During the stop, the officer detected the odor of burnt marijuana and observed an envelope on the floor of the car bearing the name "Supergold." The officer associated this product and label with marijuana. Accordingly, he ordered the occupants of the vehicle to exit and placed them under arrest for possession of marijuana. Each of the men was patted down and separated on the roadway. The officer then returned to the stopped vehicle, examined the envelope, and determined that it contained marijuana. Thereafter, he gave *Miranda* warnings to each of the men and searched their persons. The officer returned again to the vehicle and searched the passenger compartment. In doing so, he found cocaine in the zipped pocket of a leather jacket found on the backseat and belonging to Belton, who was a passenger in the vehicle. *Belton*, 453 U.S. at 455-56, 69 L. Ed. 2d at 772, 101 S. Ct. at 2861-62.

The trial court denied Belton's motion to suppress the cocaine and the intermediate appellate court affirmed, upholding the constitutionality of the search. The New York Court of Appeals reversed, holding that the warrantless search was unconstitutional where, under the circumstances, the jacket and its contents were no longer accessible to Belton or the other passengers. *Belton*, 453 U.S. at 456, 69 L. Ed. 2d at 772, 101 S. Ct. at 2862. The Court noted the need to establish a "workable definition of 'the area within the immediate control of the arrestee' " in light of the cases decided since *Chimel*. *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 774, 101 S. Ct. at 2864. Applying the rationale in *Chimel* to the facts in *Belton*, the Court concluded "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that vehicle." *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864. Furthermore, any such search could permissibly extend to the "contents of any containers found within the passenger compartment, for if the passenger compartment is within reach ***, so also will containers in it be within *** reach." *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864. Moreover, the same analysis would obtain whether the container was opened or closed, "since the justification for the search is not that the arrestee has no privacy interest in the container, but that the law-

ful custodial arrest justifies the infringement of any privacy interest the arrestee may have." *Belton*, 453 U.S. at 461, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864. According to the Court, this conclusion was consistent with the rationale in *Chimel* that, although all of the drawers in that defendant's home could not be searched, those drawers within the reach of the defendant could be searched "because of the danger their contents might pose to the police." *Belton*, 453 U.S. at 461, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864, citing *Chimel*, 395 U.S. at 763, 23 L. Ed. 2d at 694, 89 S. Ct. at 2040.

The *Belton* ruling was given further consideration by the Court in *Thornton v. United States*, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127 (2004). *Thornton* involved a situation where a defendant was approached after leaving his vehicle. The officer in *Thornton*, who was driving an unmarked unit, initially noticed the defendant when he was driving suspiciously and then ran the vehicle's tags. The information the officer received indicated that the tags did not match the model vehicle defendant was driving. However, before he was able to curb defendant's vehicle, defendant parked in a parking lot and exited his vehicle. The officer approached defendant, asked for his license, and explained what he learned about the vehicle tags. The officer observed that the defendant seemed nervous and, out of concern for his safety, the officer asked if the defendant had any drugs or weapons. The defendant responded in the negative. The defendant then agreed to a pat-down search of his person and the officer found bags containing marijuana and crack cocaine. The defendant was placed under arrest and secured in the officer's patrol car. The officer then searched the defendant's vehicle and found a gun under the driver's seat. *Thornton*, 541 U.S. at 617-18, 158 L. Ed. 2d at 912, 124 S. Ct. at 2129.

The district court denied Thornton's motion to suppress and the Court of Appeals for the Fourth Circuit affirmed. *Thornton*, 541 U.S. at 618-19, 158 L. Ed. 2d at 911-12, 124 S. Ct. at 2129-30. On further review, the Supreme Court concluded, "Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." *Thornton*, 541 U.S. at 623, 158 L. Ed. 2d at 914, 124 S. Ct. at 2132. Consequently, in cases like *Thornton*, where the arrestee is a " 'recent occupant' of a vehicle," it is permissible for the police to search the vehicle incident to the arrest. *Thornton*, 541 U.S. at 623-24, 158 L. Ed. 2d at 915, 124 S. Ct. at 2132.

Moving forward to *Gant*, there the defendant was approached as a part of a narcotics investigation initiated on the basis of an anonymous tip. The defendant answered the door to a home and was asked by

police if the owner of the premises was available. Gant identified himself to the officers and indicated that the owner was not home. Thereafter, the officers checked Gant's records and discovered he had a suspended license and an outstanding warrant. On the evening of the same day, the officers returned to the home and arrested two individuals at the home. After those individuals were in custody, Gant drove back to the home and into the driveway. Officers recognized Gant's vehicle and were able to confirm his identity when a light was shone on him as he drove past. Gant parked his car, exited, and closed the door. He was beckoned by one of the police officers and upon approaching he was taken into custody and placed in a squad car. A subsequent search of Gant's car uncovered a gun and a quantity of cocaine. *Gant*, 556 U.S. at 335-36, 173 L. Ed. 2d at 491-92, 129 S. Ct. at 1714-15.

The trial court in *Gant* found the search was permissible as it was incident to the arrest for the offense of driving without a license and took place not long after Gant exited the car. *Gant*, 556 U.S. at 337, 173 L. Ed. 2d at 492, 129 S. Ct. at 1715. The Arizona Supreme Court reversed the case, finding the search was unreasonable according to fourth amendment jurisprudence. *Gant*, 556 U.S. at 337-38, 173 L. Ed. 2d at 492-93, 129 S. Ct. at 1715-16.

In *Gant*, the Court gave further refinement to the "search incident" exception:

> "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Gant*, 556 U.S. at 351, 173 L. Ed. 2d at 501, 129 S. Ct. at 1723-24.

An important foundational component of the Court's ruling was the nature of Gant's arrest. *Gant*, 556 U.S. at 343-44, 173 L. Ed. 2d at 497, 129 S. Ct. at 1719. Gant was placed under arrest for a traffic offense—"an offense for which police could not expect to find evidence in the passenger compartment" of his car. *Gant*, 556 U.S. at 344, 173 L. Ed. 2d at 497, 129 S. Ct. at 1719. "Because police could not reasonably have believed either that [he] could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable." *Gant*, 556 U.S. at 344, 173 L. Ed. 2d at 497, 129 S. Ct. at 1719. We find *Gant*'s rationale particularly instructive in the case at bar. Here, even assuming the arrest was proper, it was concededly

based upon a traffic offense. Following the dictate of *Gant*, that basis for arrest would offer little support for the search that ensued. We therefore conclude that because the search was unreasonable and not in conformity with fourth amendment principles, the evidence derived therefrom was properly suppressed. See also *People v. Stehman*, 203 Ill. 2d 26, 38-39, 783 N.E.2d 1, 8 (2002) (holding search of defendant's vehicle was not incident to the arrest because the passenger compartment was not "within defendant's immediate control" or reachable at the time of the stop and arrest); *People v. Bailey*, 232 Ill. 2d 285, 300-01, 903 N.E.2d 409, 418 (2009).

Next, the State argues that even if a fourth amendment violation took place here, the exclusionary rule should not be applied where defendant "abandoned" the vehicle. The State also maintains that the exclusionary rule has not been absolutely applied in all cases where a fourth amendment violation was found. Defendant argues the State waived this argument by failing to raise the issue in its motion to reconsider filed in the trial court.

In its motion to reconsider, the State offered an alternative argument that defendant's flight "was an intervening circumstance sufficient to attenuate the defendant's initial detention and the officer's subsequent discovery that the defendant's license was revoked." On appeal, the State notes that the search did not take place until after it was determined that defendant's license was revoked and defendant fled the scene. Additionally, "since defendant fled, he abandoned any privacy expectation he had in the vehicle, rendering Officer Cloherty and the other officers free to lawfully search it." While we note some similarities in these two arguments, they are fundamentally different. The argument before the trial court was essentially that there were two distinct phases of the interaction, one that was unconstitutional and another that was separated from any unconstitutionality by the defendant's own actions by committing the offense of fleeing. The argument offered on appeal, however, centers upon defendant's privacy interest.

It is axiomatic that arguments may not be raised for the first time on appeal. *People v. Thompson*, 337 Ill. App. 3d 849, 854, 787 N.E.2d 858, 863 (2003). This prohibition is equally applicable to the State as to a defendant in a criminal case. *People v. Exson*, 384 Ill. App. 3d 794, 803, 896 N.E.2d 844, 851 (2008). However, the rule of waiver applies to the State only where it is appealing a grant of a motion to suppress. *Thompson*, 337 Ill. App. 3d at 854, 787 N.E.2d at 863. As noted, the alternative arguments offered by the State in the trial court and on appeal are not the same. Consequently, the argument offered on appeal is raised for the first time before us. Because it is improper to raise an argument for the first time on appeal, we deem it waived.

Even were we to determine the abandonment argument was not waived, it would fail on its merits. The State cites *People v. Hoskins*, 101 Ill. 2d 209, 220, 461 N.E.2d 941, 946 (1984), for the proposition that the ordinary protections against unreasonable searches and seizures do not apply to abandoned property. We do not contest the correctness of this proposition or that *Hoskins* stands for it. Following the logic in *Hoskins*, the State argues that defendant lost his privacy interest by way of his abandonment of the vehicle when he fled.

*Hoskins* is factually distinct from the present case. *Hoskins* involved the search of a female defendant's purse after she dropped or threw it while being pursued by police officers who attempted to arrest her on a prostitution charge. *Hoskins*, 101 Ill. 2d at 219, 461 N.E.2d at 946. There, the supreme court found the defendant's intent was to "flee and escape and not return for the purse. The intent *** was to abandon it." *Hoskins*, 101 Ill. 2d at 219, 461 N.E.2d at 946. Accordingly, the supreme court found there was no search in that case. *Hoskins*, 101 Ill. 2d at 220, 461 N.E.2d at 946. Likewise, the State's reliance on *People v. Childs*, 226 Ill. App. 3d 915, 589 N.E.2d 819 (1992), is misplaced. In *Childs*, the defendant feigned not knowing he was being pulled over by the police, exited his vehicle and began to walk away, ignored an order to stop, and then fled, leaving his keys in the vehicle's ignition. *Childs*, 226 Ill. App. 3d at 919-20, 589 N.E.2d at 822.

In evaluating the State's argument, we are mindful of the existence of a privacy interest in one's car. See *Gant*, 556 U.S. at 345, 173 L. Ed. 2d at 497, 129 S. Ct. at 1720 ("Although we have recognized that a motorist's privacy interest in his vehicle is less substantial than in his home, [citation], the former interest is nevertheless important and deserving of constitutional protection"). The car searched in the case *sub judice* was not abandoned. Instead, it was closed and locked when defendant exited it. By the time the encounter between defendant and Officer Cloherty commenced, defendant was out of the vehicle and away from it. He was not removed from the vehicle or ordered out of the vehicle, though one version of Officer Cloherty's account is unclear on this point. Nonetheless, the State does not assert that defendant was asked out of the car or fled directly from the car. Instead, the encounter began once defendant was out of the vehicle and had already locked it. Moreover, the car was locked and parked legally. These circumstances, when coupled with common sense, dictate that there was no abandonment of the vehicle in the sense described in case law on the subject. It is a quantum leap of logic to conclude that the vehicle was abandoned and, therefore, subject to search without a warrant or probable cause.

In support of its position that the exclusionary rule should be relaxed in the present case, the State points to *Herring v. United States*, 555 U.S. 135, 172 L. Ed. 2d 496, 129 S. Ct. 695 (2009). *Herring* involved the arrest of a defendant by the authorities of one county on the basis of a warrant in a neighboring county listed on a shared database. However, the warrant had actually been recalled and the database was not properly updated to reflect that fact. *Herring*, 555 U.S. at 137-38, 172 L. Ed. 2d at 502, 129 S. Ct. at 698. The Supreme Court rejected Herring's argument that the suppression of evidence should be automatic in the presence of police negligence as occurred in his case. *Herring*, 555 U.S. at 147, 172 L. Ed. 2d at 509, 129 S. Ct. at 704. Instead, the Court found "the conduct at issue was not so objectively culpable as to require exclusion." *Herring*, 555 U.S. at 146, 172 L. Ed. 2d at 508, 129 S. Ct. at 703.

Unlike the officers in *Herring*, the officer in the present case was not acting in reliance on wrong information. Instead, he was operating on his own suspicion or hunch. Additionally, the Court's rationale in *Herring* examined the related concepts of law enforcement culpability and deterrence of unconstitutional conduct by law enforcement. *Herring*, 555 U.S. at 142-43, 172 L. Ed. 2d at 506, 129 S. Ct. at 701. The Court observed:

> "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level." *Herring*, 555 U.S. at 144, 172 L. Ed. 2d at 507, 129 S. Ct. at 702.

Here, the choices and actions were those of Officer Cloherty alone. He was not impelled by administrative negligence or misinformation. Here, Cloherty's choices and actions were culpable and there is a deterrent value to excluding evidence recovered in this manner. Consequently, there is no basis to relax the application of the exclusionary rule under these circumstances.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

FITZGERALD SMITH, P.J., and TULLY, J., concur.