734 So.2d 480 (1999)
Will PERKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1424.
District Court of Appeal of Florida, Fourth District.
May 12, 1999.
Richard L. Jorandby, Public Defender, and Cherry Grant, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
STONE, C.J.
Pursuant to Florida Rules of Appellate Procedure 9.030(b)(4) and 9.160, we accept jurisdiction of the following question certified by the county court as of great public importance:
WHERE THE IDENTITY OF A DRIVER IS AN ESSENTIAL ISSUE THAT MUST BE PROVEN, IS THAT IDENTITY SUBJECT TO SUPPRESSION IF IT IS DISCOVERED AS A RESULT OF AN UNLAWFUL SEARCH AND SEIZURE?
We answer the question in the affirmative and reverse.
Perkins was unlawfully stopped while driving a motor vehicle. The officer obtained his driver's license and "ran" the license to determine whether it was valid. The check revealed that Perkins' license was suspended.
Perkins moved to suppress the fruits of the illegal stop. The trial judge recognized that the undisputed facts showed that the officer had no probable cause to stop the vehicle. Nevertheless, the trial *481 court denied Perkins' motion to suppress, acknowledging the binding authority of Ware v. State, 679 So.2d 3 (Fla. 2d DCA 1996), and O'Neal v. State, 649 So.2d 311 (Fla. 3d DCA 1995).
In Ware and O'Neal, the Second and Third Districts decided that the identity of the defendant is not subject to suppression under the same circumstances found in this case. Both cases relied on the United States Supreme Court opinion of INS v. Lopez-Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), which holds that "[t]he `body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest." Id. at 1039, 104 S.Ct. 3479.
In Lopez-Mendoza, the respondent, an illegal alien, was unlawfully arrested at his place of employment. INS agents, without a warrant, entered the premises and questioned the proprietor and Lopez-Mendoza. They learned his name and that he was from Mexico and, without more, arrested him. At the INS office, he confessed that he had not passed through immigration when he entered this country. The court of appeals vacated a deportation order and the Supreme Court reversed, concluding that a deportation proceeding is purely civil and that various protections that apply in the contest of a criminal trial do not apply in a deportation hearing.
The Court's reversal was based on the maxim that "[t]he `body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." Lopez-Mendoza, 468 U.S. at 1039, 104 S.Ct. 3479. The court relied on Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). Both Pugh and Collins involve the question of whether an illegally arrested defendant can be brought to trial despite the illegality of his detention. As stated in Collins, "[t]his Court has never departed from the rule announced in Ker v. Illinois, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a `forcible abduction.'" Id., 72 S.Ct. at 511. The essential issue in Lopez-Mendoza was whether he could be "summoned to a deportation hearing following an unlawful arrest." Id. at 1040, 104 S.Ct. 3479. Thus, the question in Lopez-Mendoza was one of jurisdiction, not whether the INS could prove his identity, evidence of which was not objected to by the respondent.
In a companion proceeding to that of Lopez-Mendoza, the respondent, Sandoval-Sanchez, did object to the evidence as to his identity. The Court ruled that the evidence was admissible, finding that the exclusionary rule did not apply to a deportation hearing. The Supreme Court did not, however, rule on whether the identity of the defendant, learned as a result of the illegal stop, was inadmissible as fruit of the poisonous tree. Therefore, the Ware and O'Neal courts' reliance on that decision may have been misplaced.
Here, the trial judge observed that Lopez-Mendoza was distinguishable,[1] but *482 recognized his obligation to follow the district court decisions in Ware and O'Neal.
We have considered State v. Ramos, 598 So.2d 267 (Fla. 3d DCA 1992), and State v. Leyva, 599 So.2d 691 (Fla. 3d DCA 1992), addressed in O'Neal, but deem them inapposite. In Ramos, where an officer had effected a valid Terry[2] stop, the officer was justified in asking for identification, the proof linking the defendant to the motor vehicle records. In Leyva, the police officer knew the subject and knew that his driver's license had been previously suspended.
We can discern no basis for distinguishing the circumstances here from others in which evidence must be suppressed, as fruit of the poisonous tree, where discovered following an unlawful stop. E.g., Robinson v. State, 617 So.2d 412 (Fla. 2d DCA 1993); Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)(where patrolman stopped a motor vehicle simply to check the driver's license and registration, *483 marijuana found in plain view suppressed as fruit of poisonous tree).
We, therefore, reverse, certify conflict with Ware and O'Neal, and remand for further proceedings.
FARMER and TAYLOR, JJ., concur.
NOTES
[1] Judge Ciklin, before certifying this question, quoted extensively from another county court opinion as follows:

In State v. Jefferson, No. 97-003511TC A08 (Fla. 15th Cir.Ct. Oct. 21, 1997), Palm Beach County Judge Barry M. Cohen made a concerted effort to both highlight the important constitutional issues presented by the various cases and distinguish them:
Nonetheless, several district courts have held that the `identity' of a defendant may not be suppressed even if it occurred after an unjustified stop. O'Neal v. State, 649 So.2d 311 (Fla. 3d DCA 1995); Ware v. State, 679 So.2d 3 (Fla. 2d DCA 1996)(citing O'Neal, 649 So.2d at 311).
Ware and O'Neal may be distinguished from the instant case because neither case addresses the issue of what "identity" means.
Both Ware and O'Neal cite the United States Supreme Courts' [sic] opinion in INS v. Lopez-Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), for the principle that identity may not be suppressed. However, the actual language used by the Lopez-Mendoza Court was that "[t]he `body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."
Id. 468 U.S. at 1039[, 104 S.Ct. 3479]. The Lopez-Mendoza Court then cited a line of cases in support of this proposition which dealt with the `body' of a Defendant in the context of personal jurisdiction, not in the context of offering evidence of identity at trial. See Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952)("[T]he power of a court to try a person for a crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a `forceable abduction.'")(citing Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 30 L.Ed. 421 (1886)).
Comparing the two companion cases before the Lopez-Mendoza court reveals that the court was addressing personal jurisdiction when it stated that the body or identity of a defendant may not be suppressed. Respondent Lopez-Mendoza "objected only to the fact that he had been summoned to a deportation hearing following an unlawful arrest; he entered no objection to the evidence offered against him." Lopez-Mendoza, 468 U.S. at 1040, 104 S.Ct. 3479. Thus, the court concluded "[t]he BIA [Board of Immigration Appeals] correctly ruled that `[t]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding.'" Id. (citation omitted). However, regarding the respondent in the companion case, the court stated "Respondent Sandoval-Sanchez has a more substantial claim." Id. "He objected not to his compelled presence at a deportation proceeding, but to evidence offered at that proceeding." Id. The court then applied a Janis balancing test to the proceedings at issue and concluded that the balance came out "against applying the exclusionary rule in civil deportation hearings held by the INS." Id. at 1050 (applying the balancing test from United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)). Therefore, the holdig of Lopez-Mendoza is that in the context of personal jurisdiction, the body or identity of a defendant may not be suppressed and that the exclusionary rule does not apply to civil deportation proceedings. This court concludes that had Sondoval-Sanchez's case arisen in a criminal prosecution, the exclusionary rule would have applied to suppress evidence of the defendant's identity.
Federal cases following Lopez-Mendoza have likewise interpreted `identity' to mean the body or identity of a defendant in the context of personal jurisdiction. See United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1064 (9th Cir.1994)("On careful examination, Lopez-Mendoza merely reaffirms the longstanding rule that a court does not lose jurisdiction over an individual merely because the government secured his presence in the forum through illegal means."); United States v. Mitchell, 957 F.2d 465, 470 (7th Cir.1992)("The manner in which Mitchell was brought to trial, however, does not affect the ability of the government to try him. The Supreme Court has upheld this proposition for over 100 years, refusing to apply an exclusionary rule to the body of the Defendant."); Matta-Ballesteros v. Henman, 896 F.2d 255 (7th Cir.1990).
Hence, although Ware and O'Neal did not address what `identity' means, Lopez-Mendoza and the cases which followed make it clear that `identity' simply refers to the body or person of a defendant for personal jurisdiction purposes.
Id.
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).