760 So.2d 85 (2000)
STATE of Florida, Petitioner,
v.
Will PERKINS, Respondent.
No. SC95741.
Supreme Court of Florida.
April 27, 2000.
Rehearing Denied June 12, 2000.
Robert A. Butterworth, Attorney General, Celia A. Terenzio, Bureau Chief, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, Florida, for Petitioner.
Richard L. Jorandby, Public Defender, and Cherry Grant, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida, for Respondent.
PER CURIAM.
We have for review the Fourth District's decision in Perkins v. State, 734 So.2d 480 (Fla. 4th DCA 1999), which certified conflict with the Third District's decision in O'Neal v. State, 649 So.2d 311 (Fla. 3d DCA 1995), and the Second District's decision in Ware v. State, 679 So.2d 3 (Fla. 2nd DCA 1996). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons that follow we approve Perkins, and disapprove O'Neal and Ware.
The respondent, Will Perkins, was stopped by a Palm Beach County police officer on July 13, 1997, for the sole purpose of checking the status of his driver's license. After Perkins was stopped, the officer obtained Perkins' driver's license and discovered that it was suspended. Perkins was arrested and charged with driving with a suspended license.
Perkins moved the Palm Beach County Court to suppress all the evidence obtained from the stop. The State conceded that the officer did not see Perkins commit any traffic violations, or any other activity justifying a stop.[1]
*86 Accordingly, the trial court held the stop unlawful. The State, however, maintained that the evidence obtained from the stop, i.e., the knowledge of Perkins' name and driving record, was not subject to suppression under O'Neal and Ware. Both O'Neal and Ware held that the identity of a defendant could not be suppressed as the fruit of an unlawful stop in a prosecution for driving with a suspended license.
The trial court, feeling duty-bound to follow the holdings of the Third and Second Districts in O'Neal and Ware, denied Perkins' motion to suppress. Thereafter, Perkins pled no contest to driving with a suspended license, reserving his right to appeal. In its order the trial court certified the following question to the Fourth District Court of Appeal as being of great public importance:
Where the identity of a driver is an essential issue that must be proven, is that identity subject to suppression if it is discovered as a result of an unlawful search and seizure?[2]
On appeal, the Fourth District answered the certified question in the affirmative, and certified conflict with O'Neal and Ware. See Perkins v. State, 734 So.2d 480, 483 (Fla. 4th DCA 1999).

O'Neal and Ware
In O'Neal and Ware, the Third and Second Districts answered certified questions in the negative which were nearly identical to that question certified to the Fourth District in the instant case.[3] In concluding that a defendant's identity is not a suppressible "fruit" of an unlawful stop in a prosecution for driving while license suspended, both courts principally relied on language from INS v. Lopez-Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). Specifically, the O'Neal and Ware courts cited the following language in Lopez-Mendoza as controlling:
The "body" or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.
Id. at 1039, 104 S.Ct. 3479.
We agree with the Fourth District's conclusion that the reliance by the Second and Third Districts on the aforementioned language was misplaced.
In Lopez-Mendoza, the Supreme Court addressed the question of whether the "Fourth Amendment's exclusionary rule should be extended to civil deportation proceedings." United States v. Verdugo-Urquidez, 494 U.S. 259, 272, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990). In holding that the exclusionary rule did not extend to civil deportation proceedings, the Court addressed the claims of two aliens, Lopez-Mendoza and Sandoval-Sanchez, both of whom were denied protection of the exclusionary rule in their deportation proceedings.
Lopez-Mendoza claimed his arrest was illegal and, therefore, objected to his compelled presence at the deportation proceeding. As the Court noted, Lopez-Mendoza neither objected to nor sought the suppression of evidence: "At his deportation hearing Lopez-Mendoza objected only to the fact that he had been summoned to a deportation hearing following an unlawful arrest; he entered no objection to the evidence offered against him." Lopez-Mendoza, *87 468 U.S. at 1040, 104 S.Ct. 3479. Lopez-Mendoza essentially claimed that his illegal arrest operated to deprive the immigration court of jurisdiction over his person. It was in the context of this claim, and not a claim to suppress evidence, that the Court issued the language relied upon by the O'Neal and Ware courts. This distinction was highlighted by the Court in distinguishing Mendoza's claim from that raised in the consolidated case of Sandoval-Sanchez: "Respondent Sandoval-Sanchez has a more substantial claim. He objected not to his compelled presence at a deportation proceeding, but to evidence offered at that proceeding." Lopez-Mendoza, 468 U.S. at 1040, 104 S.Ct. 3479.[4] Moreover, unlike its treatment of Lopez-Mendoza's claim, the Court did not address the substance of Sandoval-Sanchez's evidentiary claim. The Court instead mooted Sandoval-Sanchez's claim by holding the exclusionary rule inapplicable to civil deportation proceedings. Id. at 1050, 104 S.Ct. 3479.
Thus, it appears that the Court's reference to the "body" or identity of a defendant as immune from suppression truly referred to identity in a personal jurisdiction sense.[5] This reading is further supported by an analysis of the cases cited by the Court in support of its proposition. See Gerstein v. Pugh, 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) ("Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction."); Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952) ("This Court has never departed from the rule ... that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a `forcible abduction.'"); United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 158, 44 S.Ct. 54, 68 L.Ed. 221 (1923) ("Irregularities on the part of the government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law.").[6]

Suppression of Evidence
In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Court established the test to be applied when determining whether a Fourth Amendment violation requires the suppression of seized evidence:

*88 We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."
Id. at 487-88, 83 S.Ct. 407 (quoting John MacArthur Maguire, Evidence of Guilt 221 (1959)).
It is clear that in the instant case the evidence required to prosecute the charge of driving with a suspended license came directly from the exploitation of the unlawful stop. We agree with the Fourth District and find "no basis for distinguishing the circumstances here from others in which evidence must be suppressed, as fruit of the poisonous tree, where discovered following an unlawful stop." Perkins, 734 So.2d at 482; e.g., Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (affirming suppression of marijuana found in plain view as the fruit of an unlawful stop where the driver was randomly stopped solely to check his driver's license and registration and the State offered no empirical data to support its claim that the stop was justified by a broad concern for highway safety); United States v. Johns, 891 F.2d 243 (9th Cir. 1989) (suppressing marijuana as the fruit of an unlawful stop).
Other courts have suppressed some if not all of the evidence obtained from an unlawful stop in driving with suspended license cases. See People v. Santiago, 168 Misc.2d 883, 645 N.Y.S.2d 746, 748-749 (N.Y.City Crim.Ct.1996) (holding that the officer's identification evidence and observations and the DMV records obtained as a direct result of an unlawful stop may be suppressed); State v. Asbury, No. 16771, 1998 WL 309267, at *5-6, No. 16771 (Ohio Ct.App. June 12, 1998) (unpublished opinion) (suppressing the officer's post-stop observation of the defendant in the driver's seat where the evidence established that the officer could not see the defendant or know his identity prior to the unlawful stop); State v. Starr, 91 Or.App. 267, 754 P.2d 618, 620 (1988) (suppressing all the evidence flowing from the unlawful stop, including the defendant's name and DMV records); Zimmerman v. Commonwealth, 234 Va. 609, 363 S.E.2d 708, 710 (1988) (dismissing an indictment for driving after having been declared an habitual offender where the driver was stopped unlawfully and "defendant's identity and connection with unlawful activity were only first discovered through the illegal stop").
Consistent with this treatment of the exclusionary rule, we hold that when, as in the instant case, an officer unlawfully stops a defendant solely to determine whether he or she is driving with a suspended license, that officer's post-stop observation of the defendant behind the wheel must be suppressed.[7]
*89 Accordingly, we disapprove O'Neal and Ware and approve Perkins' reversal of the trial court's judgment to the extent it holds the officer's post-stop observations of the defendant subject to the exclusionary rule. We remand for further proceedings consistent with this opinion.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
QUINCE, J., dissents with an opinion.
QUINCE, J., dissenting.
I agree with the Second District Court of Appeal and the Third District Court of Appeal in Ware v. State, 679 So.2d 3 (Fla. 2d DCA 1996) and O'Neal v. State, 649 So.2d 311 (Fla. 3d DCA 1995), that the identity of a suspect gained through an illegal stop is not subject to suppression.[8] The decision in both cases was premised on the Supreme Court's holding in Immigration and Naturalization Service v. Lopez-Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). And while Lopez-Mendoza involves a deportation proceeding, the principle enunciated by the Supreme Court, that "the body or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest" is equally applicable to this criminal proceeding. 468 U.S. at 1039, 104 S.Ct. 3479. The State suggests in its brief and at oral argument that the fact which should be subject to suppression in this case is that of driving. It seems clear that law enforcement learned the fact of defendant's operation of a vehicle by the stop of that vehicle; therefore, the fact of driving should be the fact challenged as the fruit of the illegal stop.
NOTES
[1] At the suppression hearing the State proffered evidence indicating that another officer radioed the stop officer and advised him to stop the defendant because the officer did not believe he had a license.
[2] In its order, the trial court reproduced an article by Wayne S. Melnick criticizing the results reached in O'Neal and Ware as being driven by a misreading of federal case law. Wayne S. Melnick, Suppression of Identity: Has the Supreme Court Carved Yet Another Exception to the Exclusionary Rule?, 9 Fla. Defender 24 (1997).
[3] In Ware, the Second District addressed the identical certified question raised in the instant case. The Third District in O'Neal considered the following question:

Is the actual identity of a defendant obtained pursuant to an illegal stop suppressible as a fruit of the poisonous tree where the police officer had no knowledge of the defendant's identity prior to the stop?
O'Neal, 649 So.2d at 312.
[4] Sandoval-Sanchez sought the suppression of statements he made to INS agents during an illegal detention in which he admitted his unlawful entry into the United States. Lopez-Mendoza at 1037, 104 S.Ct. 3479.
[5] In United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), the Court addressed the question of whether an "in-court identification of the accused by the victim of a crime should be suppressed as the fruit of the defendant's unlawful arrest." Id. at 465, 100 S.Ct. 1244. In holding that the in-court identification was not the product of the alleged Fourth Amendment violation, the majority opinion refused to answer the question of whether the defendant's "corpus" or "person" could be considered a "species of evidence" and therefore a "possible fruit of police misconduct." That portion of the majority opinion authored by Justice Brennan, however, was joined by only two others, Justices Stewart and Stevens. The remaining five Justices, led by Justice White, thought it appropriate to address the question, and in so doing ostensibly rejected the claim that a defendant's "face can be suppressible as a fruit of an unlawful arrest." Analysis of Justice White's opinion, however, reveals an affirmation of the Frisbie rule of personal jurisdiction echoed in Lopez-Mendoza, rather than a complete rejection of identity as a "species" of evidence.
[6] Federal cases interpreting the Lopez-Mendoza identity language have similarly understood it to refer to personal jurisdiction. See United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1064 (9th Cir.1994) ("On careful examination, Lopez-Mendoza merely reaffirms the longstanding rule that a court does not lose jurisdiction over an individual merely because the government secured his presence in the forum through illegal means."); Accord Brown v. Doe, 2 F.3d 1236, 1243 (2nd Cir. 1993); United States v. $639,558 in U.S. Currency, 955 F.2d 712, 715 (D.C.Cir.1992); United States v. Pelaez, 930 F.2d 520, 525 (6th Cir.1991); Matta-Ballesteros v. Henman, 896 F.2d 255, 260 (7th Cir.1990).
[7] Cf. United States v. Foppe, 993 F.2d 1444 (9th Cir.1993). In Foppe, the defendant was convicted of unarmed bank robbery and on appeal challenged the admissibility of an officer's observations of him during an illegal pat-down search in which the police discovered an ink-stained wad of cash in his back pocket. The officer testified at trial that when he was arrested Foppe had a mustache similar to that of the robber in the surveillance photographs taken at the bank and had since grown a full beard. The State argued that Foppe's subsequent growth of a full beard demonstrated consciousness of guilt. The Ninth Circuit, in analyzing whether the officer's observations were subject to suppression, asked in part "whether the illegal activity tend[ed] to significantly direct the investigation to the evidence in question." Id. at 1449. The Court concluded that the observations of the defendant were incidental to the criminal investigation and therefore not suppressible: "Because incidental observations which police have in mind when detaining a suspect are not objective, suppression of such observations will have no deterrent effect on unlawful police activity." Id.

Such is not the case here where the defendant was stopped for the sole purpose of determining if in fact he was driving with a suspended license. The principal evidence in the instant case is the observation of the defendant behind the wheel. When viewed in the context of driving with a suspended license, the observations by a police officer of a defendant following an unlawful stop can hardly be described as incidental to the criminal investigation.
[8] It appears especially harsh to suppress the defendant's identity in this case because there is some evidence that the defendant was known to another officer in the department and the other officer was somehow involved in this stop.