# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *People v. Lopez*, 2018 IL App (1st) 153331

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE LOPEZ, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-15-3331 |
| Filed | October 5, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-14375; the Hon. Mary Colleen Roberts, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Brian E. Koch, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Gina DiVito, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.<br>Justices Connors and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant Jose Lopez was charged with driving while his license was suspended (DWLS) in violation of section 6-303(a) of the Illinois Vehicle Code (625 ILCS 5/6-303(a) (West 2014)). Defendant filed a motion to quash arrest and suppress evidence, alleging that the traffic stop that led to his arrest was illegal. After an evidentiary hearing, the circuit court denied defendant's motion. Following a stipulated bench trial, defendant was convicted of DWLS and sentenced to 24 months of probation and 30 days' imprisonment. On appeal, defendant contends that the court erred in denying his motion to quash arrest and suppress evidence. Specifically, he argues that the anonymous tip relied upon by the arresting officer was unreliable and inadequate to establish reasonable suspicion of drunk driving. We reverse.

¶ 2                                       BACKGROUND

¶ 3        Defendant was charged with DWLS under section 6-303(a) of the Illinois Vehicle Code (*id.*), stemming from a traffic stop on August 3, 2014. Defendant moved to quash arrest and suppress evidence, alleging that the traffic stop violated his right to be free from unreasonable seizures. In response, the State filed a motion to strike defendant's motion. The State argued that, even if the arresting officer illegally seized defendant, the identity of a defendant is not evidence that can be suppressed. The circuit court denied the State's motion to strike, and the case proceeded to an evidentiary hearing on defendant's motion. The only witness who testified was Chicago police officer Reyes Martinez.

¶ 4        Officer Martinez testified that at around 8:00 p.m. on August 3, 2014, he was on duty near the intersection of Pulaski Road and 50th Street in Chicago. He received a message from another police vehicle that there "was a DUI driver heading outbound on Pulaski from 43rd Street." The vehicle was described as a black Expedition with a partial license plate number NZ 1. The driver of the Expedition was described as "a male Hispanic." Officer Martinez did not know the identity of the person who reported the alleged drunk driver, nor did he know how much time elapsed between the initial report and the eventual traffic stop.[1]

¶ 5        Officer Martinez then spotted a black Expedition, with a license plate starting with N 211 driving southbound on Pulaski Road. Officer Martinez pulled up behind the Expedition at the intersection of Pulaski Road and 50th Street. He did not observe any traffic violations or improper lane usage. After the light turned green, Officer Martinez activated his emergency lights, and the Expedition immediately pulled over. He did not have a warrant.

¶ 6        When he approached the Expedition, Officer Martinez saw that defendant was an "occupant" of the vehicle. Defendant handed Officer Martinez his state identification card. By "reading through that state ID," Officer Martinez determined that defendant's license was not valid. He then arrested defendant for driving without a valid license. Officer Martinez did not conduct any breath test or field sobriety tests on defendant.

---

[1]Although he admitted that he did not know when the tip originally came in, Officer Martinez "guessed" that two minutes passed between the time the tip was reported and the time he identified the vehicle. This guess was based on the time it would take a car to travel from 43rd Street to 50th Street. Obviously, this statement has no value for evaluating the accuracy of the tip because the guess itself assumes that the tip was accurate.

¶ 7    The circuit court denied defendant's motion to quash arrest and suppress evidence, finding that Officer Martinez "had reasonable suspicion to conduct an investigatory stop." Defendant filed a motion to reconsider, which the court denied. The case proceeded to a bench trial in which the parties stipulated that Officer Martinez would testify as he had in the evidentiary hearing. The State presented a copy of defendant's driving abstract as evidence that his license was suspended at the time of the traffic stop. The court found defendant guilty and sentenced him to 24 months' probation and 30 days' imprisonment. This appeal followed.

¶ 8                                              ANALYSIS

¶ 9    Defendant contends that the circuit court erred in denying his motion to quash arrest and suppress evidence because Officer Martinez lacked reasonable, articulable suspicion of criminal activity to perform the traffic stop.

¶ 10    When a trial court's ruling on a motion to suppress involves factual determinations or credibility assessments, the court's findings will not be disturbed on review unless they are against the manifest weight of the evidence. *People v. Grant*, 2013 IL 112734, ¶ 12. However, we review *de novo* the court's ultimate legal ruling to grant or deny the motion. *Id.*

¶ 11    To prevail on a motion to suppress, "[t]he defendant must make a *prima facie* case that the police acted without a warrant and that he was doing nothing unusual (*i.e.*, indicative of criminal activity) to justify the intrusion by the police at the time of the stop or arrest. Once the defendant has made this showing, the burden of going forward with the evidence to justify the intrusion shifts to the State." *People v. Ertl*, 292 Ill. App. 3d 863, 868 (1997). There is no dispute here that defendant made a *prima facie* case that Officer Martinez acted without a warrant and that defendant did nothing unusual, such as commit any moving violations, to justify the stop. The State, therefore, had the burden of justifying the traffic stop.

¶ 12    Both the fourth amendment to the United States Constitution, which applies to the states via the fourteenth amendment (*Mapp v. Ohio*, 367 U.S. 643 (1961)), and article I, section 6, of the Illinois Constitution of 1970 guarantee the right to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Police-citizen encounters are divided into three tiers: arrests, which must be supported by probable cause; investigatory or *Terry* stops, which must be supported by reasonable, articulable, suspicion of criminal activity; and encounters that involve no coercion or detention and thus do not implicate constitutional rights. See *Grant*, 2013 IL 112734, ¶ 11; *People v. Hackett*, 2012 IL 111781, ¶ 20; *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009).

¶ 13    A police officer may conduct a brief investigatory stop of a person if the officer can point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant the stop. *Hackett*, 2012 IL 111781, ¶ 20; 725 ILCS 5/107-14, 108-1.01 (West 2014). We judge the stopping officer's conduct by an objective standard, considering whether the facts available to the officer at the moment of the stop justify the action taken. *Hackett*, 2012 IL 111781, ¶ 29. Vehicle or traffic stops are treated as *Terry* stops, so they are proper when the stopping officer has a reasonable and articulable suspicion that a traffic violation or crime has occurred. *Id.* ¶ 20.

¶ 14    When analyzing whether an informant's tip is sufficient to justify an investigatory stop, the court first assesses the reliability of the tip. *Navarette v. California*, 572 U.S. ___, ___,

134 S. Ct. 1683, 1688 (2014). If the tip is found to be reliable, the court then analyzes whether the tip "created reasonable suspicion of an ongoing crime *** as opposed to an isolated episode of past [wrongdoing]." *Id.* at ___, 134 S. Ct. at 1690.

¶ 15    This court has had many opportunities to review the question of how reliable and detailed an informant's tip about an allegedly drunk driver must be to justify an investigatory stop. See, *e.g.*, *Village of Gurnee v. Gross*, 174 Ill. App. 3d 66, 69 (1988) ("reckless driving complaint, standing alone, did not provide articulable facts sufficient to justify an investigatory stop"); *Village of Mundelein v. Minx*, 352 Ill. App. 3d 216, 222 (2004) (finding "report[ ] that defendant was 'driving recklessly,' without indicating what observations led [the tipster] to this conclusion, *e.g.*, whether defendant was speeding, running red lights, weaving between lanes, etc." insufficient to justify stop); *People v. Shafer*, 372 Ill. App. 3d 1044, 1054 (2007) (finding tip from restaurant employee about a customer who was "creat[ing] a disturbance and was intoxicated" at drive-thru window reliable); *People v. Meo*, 2018 IL App (2d) 170135, ¶ 3 (finding tip by store clerk that customer " 'had driven up to the front of the building, hitting the curb, going over the curb, and *** almost going into the building' " sufficient). However, most of our cases predate the United States Supreme Court's decision in *Navarette*, and none of our cases after *Navarette* rely heavily upon it. Because *Navarette*'s issue is identical and its facts extremely similar to those this case, we review that case at length.

¶ 16    In *Navarette*, the police received a 911 call reporting a pickup truck of a specific make, model, color, and license plate number that allegedly "[r]an the reporting party off the roadway." (Internal quotation marks omitted.) *Navarette*, 572 U.S. at ___, 134 S. Ct. at 1687. The report indicated that the truck was last seen heading southbound around a specific mile marker on Highway 1, approximately five minutes before the report was relayed to the eventual arresting officers. *Id.* at ___, 134 S. Ct. at 1686-87. Approximately 13 minutes later, a police officer observed a truck matching the description from the report and followed it for 5 minutes before pulling it over. *Id.* at ___, 134 S. Ct. at 1687. During the five minutes that the officer followed the truck, he did not observe any moving violations or "additional suspicious conduct." *Id.* at ___, 134 S. Ct. at 1691. As the police approached the stopped truck, they smelled marijuana. *Id.* at ___, 134 S. Ct. at 1687. Upon searching the truck, the police found 30 pounds of marijuana. *Id.* at ___, 134 S. Ct. at 1687.

¶ 17    The *Navarette* defendants argued that the police officer lacked reasonable suspicion to conduct the traffic stop. *Id.* at ___, 134 S. Ct. at 1687. Although the tip was anonymous[2] and the police officer did not observe any suspicious or illegal behavior, the Court found that there was adequate reasonable suspicion for the officer to conduct an investigatory stop. *Id.* at ___, 134 S. Ct. at 1691-92.

¶ 18    The Court made three observations in analyzing the reliability of the tip. First, "[b]y reporting that she had been run off the road by a specific vehicle *** the caller necessarily claimed eyewitness knowledge of the alleged dangerous driving." *Id.* at ___, 134 S. Ct. at 1689. A firsthand basis for knowledge of the alleged wrongdoing lent considerable weight to the reliability of the tip. *Id.* at ___, 134 S. Ct. at 1689. Second, the contemporaneous nature

---

[2]Although it appears the tipster did give her name to the 911 dispatcher, neither she nor the dispatcher testified. *Navarette*, 572 U.S. at ___, 134 S. Ct. at 1687 n.1. Consequently, the 911 recording was not entered into evidence, and the Court treated the tip as anonymous. *Id.*

of the tip made it more reliable. *Id.* at ___, 134 S. Ct. at 1689. The timeline of events and distance between the alleged act of reckless driving and the location where the police first identified the vehicle created the inference that the tip was made based on contemporary knowledge. *Id.* at ___, 134 S. Ct. at 1689. Finally, the Court found that the very nature of the 911 emergency system lent some support to the reliability of the tip. *Id.* at ___, 134 S. Ct. at 1689. Because 911 calls are recorded, allowing callers to be identified by voice, and 911 callers can be located geographically and by telephone number, the Court concluded that "anonymous" tips submitted by calling 911 are more reliable than other anonymous tips because "a false tipster would think twice before using such a system." *Id.* at ___, 134 S. Ct. at 1689-90.

¶ 19 Having found that the tip was reliable, the Court then analyzed whether the tip "created reasonable suspicion of an ongoing crime such as drunk driving as opposed to an isolated episode of past recklessness." *Id.* at ___, 134 S. Ct. at 1690. The Court explained that certain dangerous behaviors are recognized as indicia of drunk driving, such as swerving or "weaving all over the roadway." (Internal quotation marks omitted.) *Id.* at ___, 134 S. Ct. at 1690. A tip alleging that sort of behavior, the Court reasoned, "generally would justify a traffic stop on suspicion of drunk driving." *Id.* at ___, 134 S. Ct. at 1691. Critically, the tipster in *Navarette* "reported more than a minor traffic infraction and more than a conclusory allegation of drunk or reckless driving. Instead, she alleged a specific and dangerous result of the driver's conduct: running another car off the highway." *Id.* at ___, 134 S. Ct. at 1691.

¶ 20 This case is very similar. As in *Navarette*, this case involves an anonymous tip including details such as the car model, color, location, and direction. Both tips also included a license plate number, albeit a partial one in this case. When the police responded in both cases, they identified the subject vehicle travelling on the indicated road, in the indicated direction. And in both cases, the police initiated an investigatory stop without observing any violations or suspicious activity.

¶ 21 These cases differ, however, in both the reliability and sufficiency of the tip. The tip in this case lacks some of the indicia of reliability found in *Navarette*. The *Navarette* tipster specifically alleged that she was an eyewitness to the driver's dangerous conduct. *Id.* at ___, 134 S. Ct. at 1689. In this case, Officer Martinez testified that the tip was about "a DUI driver," with no specific allegations as to what the tipster witnessed or had particular knowledge of to conclude that the driver of the black Expedition was intoxicated. Instead of specific allegations of wrongdoing and a basis for the tipster's knowledge of the wrongdoing, the tip contained nothing more than a conclusory allegation of drunk driving and no alleged basis for that knowledge.

¶ 22 Additionally, nothing in the record indicates the source of the tip at issue here. While the tip in *Navarette* was made through the 911 emergency system and was therefore somewhat more likely to be reliable than otherwise, there is no evidence here that the tipster contacted the police through an emergency number. The State asks us to assume that the tipster was a concerned citizen and to give more weight to the reliability of the tip for that reason. But where there is no evidence that the tipster gave a name or contacted the police through an emergency number, "the tip must be treated as an anonymous one, and its reliability hinges on the existence of corroborative details observed by the police." *People v. Smulik*, 2012 IL App (2d) 110110, ¶ 8.

¶ 23    In this case, the details corroborated by Officer Martinez included the general location, direction, make, and color of the vehicle.[3] The partial license plate number NZ1 was also corroborated; a mistake in identifying a "2" as a "Z" is understandable, particularly if the informant identified the plate while the vehicle was moving. See *People v. Henderson*, 266 Ill. App. 3d 882, 887 (1994) (holding that a "U" confused with an "L" in a license plate number does not remove probable cause). These details are adequate to establish that the police have identified the person whom the tipster meant to accuse. "Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida v. J.L.*, 529 U.S. 266, 272 (2000); *Shafer*, 372 Ill. App. 3d at 1050 (holding that tip must provide adequate details to identify the proper vehicle *and* contain sufficient detail to permit reasonable inferences that the caller actually witnessed an ongoing offense).

¶ 24    *Navarette* was a "close case", but the Court found that, under the totality of the circumstances, the tip had sufficient indicia of reliability. *Navarette*, 572 U.S. at ___, 134 S. Ct. at 1692. Because the indicia of reliability in this case fall well below those in that case, particularly with regard to the source of the tipster's alleged knowledge of an ongoing offense, we find that the tip was not reliable and therefore could not justify the traffic stop.

¶ 25    Even if we had found that the tip was reliable, it would still have been insufficient to justify the traffic stop. That is because "a reliable tip will justify an investigative stop only if it creates reasonable suspicion that 'criminal activity may be afoot.' " *Id.* at ___, 134 S. Ct. at 1690 (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The tip, therefore, must include specific allegations of observed violations or conduct that led the informant to the conclusion that the driver was involved in an ongoing crime. *Shafer*, 372 Ill. App. 3d at 1050. As the Eighth Circuit aptly put it, "[a] law enforcement officer's mere hunch does not amount to reasonable suspicion [citations]; *a fortiori*, neither does a private citizen's." *United States v. Wheat*, 278 F.3d 722, 732 (8th Cir. 2001).

¶ 26    In *Navarette*, the tipster "reported more than a minor traffic infraction and more than a conclusory allegation of drunk or reckless driving. Instead, she alleged a specific and dangerous result of the driver's conduct: running another car off the highway." *Navarette*, 572 U.S. at ___, 134 S. Ct. at 1691. The cases relied upon by the State likewise involved tips with observations of specific conduct or violations. See *Shafer*, 372 Ill. App. 3d at 1047 (restaurant employee alleged driver " 'was causing a disturbance and was intoxicated' " at a restaurant's drive-thru); *People v. DiPace*, 354 Ill. App. 3d 104, 109 (2004) (eyewitnesses gave "a specific description of the erratic driving they had witnessed"); *Wheat*, 278 F.3d at 732 ("anonymous caller specifically alleged that he had personally observed several different traffic violations involving erratic driving"). In the cases relied upon by defendant, that level of specific detail is crucially absent. See *Minx*, 352 Ill. App. 3d at 222 ("although the citizen-informant had indicia of reliability, because of the lack of detail provided, [the police

---

[3]The detail that the driver was "a male Hispanic" was not corroborated until after the stop. Officer Martinez did not testify that he saw defendant at all until after he initiated the stop. "Only the facts known to the officer at the time of the seizure can be considered in determining whether the seizure was proper—information gained after the seizure is made must be disregarded." *Village of Mundelein v. Thompson*, 341 Ill. App. 3d 842, 848 (2003).

officer] lacked reasonable suspicion at the time he instituted the investigatory stop"); *City of Lake Forest v. Dugan*, 206 Ill. App. 3d 552, 555 (1990) ("officer did not testify to any specific facts which had been reported to him or to the Highwood police department which might support the conclusion about the driver [being intoxicated]").

¶ 27　　The facts of *Dugan* are particularly similar to those in this case. The tip in that case described the driver as an intoxicated white man and the car as "a white Honda bearing Illinois license plate number OR 6920," leaving a specified gas station. *Dugan*, 206 Ill. App. 3d at 554. The level of the detail in this case is virtually identical: the make, color, (partial) license plate number, and general location of the car, coupled with the race and gender of the driver. Those details, however, are entirely innocent. The critical allegation that the driver was "intoxicated" was neither specific nor corroborated. Here, the alleged illegal conduct is equally conclusory: "a DUI driver." There is no allegation of specific behavior or interactions that could have led to the conclusion that the driver was intoxicated. Officer Martinez did not observe any violations or even suspicious behavior by defendant. Without any specific allegation or indication of wrongdoing, Officer Martinez could not have had a reasonable suspicion that defendant was engaged in an ongoing crime. *Id.* at 555-56 ("The fact that [the police officer] observed a white Honda, license number OR 6920, in the area specified by the informant did not sufficiently corroborate the complaint to justify the stop [citations], because the crucial part of the complaint was that the driver was intoxicated.").

¶ 28　　Because the tip was neither reliable nor sufficiently detailed to justify a traffic stop, we hold that Officer Martinez violated defendant's constitutional right to be free from unreasonable seizure.

¶ 29　　Our supreme court has held that the "fruit of the poisonous tree" doctrine "is an outgrowth of the fourth amendment exclusionary rule." *People v. Henderson*, 2013 IL 114040, ¶ 33; see also *Alderman v. United States*, 394 U.S. 165, 171 (1969). "Under this doctrine, the fourth amendment violation is deemed the 'poisonous tree,' and any evidence obtained by exploiting that violation is subject to suppression as the 'fruit' of that poisonous tree." *Henderson*, 2013 IL 114040, ¶ 33. The exclusionary rule applies not only to physical evidence but "to any 'fruits' of a constitutional violation—whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention." *United States v. Crews*, 445 U.S. 463, 470 (1980). This rule exists to protect fourth amendment rights by deterring prohibited government conduct. *People v. Sutherland*, 223 Ill. 2d 187, 227 (2006).

¶ 30　　Because Officer Martinez lacked reasonable suspicion to perform the traffic stop, that stop is a "poisonous tree," and the circuit court should have suppressed any evidence obtained from that stop. The State argues, however, that (1) Officer Martinez's actions were not flagrant or culpable enough to justify exclusion and (2) no suppressible evidence was obtained as a result of the traffic stop. We address these arguments in turn.

¶ 31　　In arguing that the illegal stop was not so flagrant that the exclusionary rule should be applied, the State relies primarily on *Herring v. United States*, 555 U.S. 135 (2009), and other federal cases. However, those cases analyze the federal exclusionary rule, which is interpreted more narrowly than its Illinois counterpart. *People v. Gaytan*, 2015 IL 116223, ¶ 52. In *Herring*, the police made an arrest pursuant to a warrant that, unbeknownst to the arresting officers, had been recalled. *Herring*, 555 U.S. at 137-38. The Court held that the

application of the exclusionary rule would have minimal deterrent effect in such a case because the arresting officers' conduct was not sufficiently deliberate. *Id.* at 144-45.

¶ 32 This court had occasion to distinguish *Herring* in the case of *People v. Estrada*, 394 Ill. App. 3d 611 (2009). In that case, the State contended that the exclusionary rule should not be applied to suppress cocaine seized from the defendant's care during an unlawful traffic stop. *Id.* at 626. We held that because the police officer in *Estrada* made the decision to conduct an illegal traffic stop without reasonable suspicion, the exclusionary rule should be applied as a deterrent to future investigatory stops without reasonable suspicion. *Id.* at 628. The traffic stop in this case is more like that made in *Estrada* than the stop in *Herring*. Officer Martinez neither had probable cause nor relied in good faith on the sort of record-keeping error present in *Herring*. The exclusionary rule applies in this case.

¶ 33 Next, the State argues that, even if the exclusionary rule would otherwise be applicable in this case, the stop did not result in any suppressible evidence because identity-related evidence is never suppressible. For this proposition, the State relies on *Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032 (1984). Specifically, the State relies on the following language in *Lopez-Mendoza*:

"The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Id.* at 1039.

¶ 34 The Supreme Court made this statement in the context of addressing a challenge by the defendant "to the fact that he had been summoned to a deportation hearing following an unlawful arrest." *Id.* at 1040. Lopez-Mendoza had "entered no objection to the evidence offered against him." *Id.* The Court cited six cases in support of its statement on the " 'body' or identity" of the defendant, all of which considered whether *jurisdiction* over a defendant or seized *res* properly existed. *Id.* at 1039-40 (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975), *Frisbie v. Collins*, 342 U.S. 519 (1952), *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149 (1923), *United States v. Eighty-Eight Thousand, Five Hundred Dollars*, 671 F.2d 293 (8th Cir. 1982), *United States v. One (1) 1971 Harley-Davidson Motorcycle*, 508 F.2d 351 (9th Cir. 1974), and *United States v. One 1965 Buick*, 397 F.2d 782 (6th Cir. 1968)). Rather than creating a new class of evidence exempt from suppression, the "body or identity" language in *Lopez-Mendoza* simply affirms the established principle that an illegal arrest does not necessarily bar prosecution for a crime.

¶ 35 This reading of *Lopez-Mendoza* is supported by the fact that the Court distinguished Lopez-Mendoza's objections from those raised in the consolidated case of Sandoval-Sanchez: "Respondent Sandoval-Sanchez has a more substantial claim. He objected not to his compelled presence at a deportation proceeding, but to evidence offered at that proceeding." *Lopez-Mendoza*, 468 U.S. at 1040. Rather than reject Sandoval-Sanchez's claims on the same grounds as those of Lopez-Mendoza, the Court held that exclusionary rule does not apply to civil deportation proceedings. *Id.* at 1050.

¶ 36 Although the application of the "body or identity" language in *Lopez-Mendoza* appears to be one of first impression in Illinois, the Florida Supreme Court addressed the issue thoroughly and persuasively. In *State v. Perkins*, 760 So. 2d 85, 86-89 (Fla. 2000), the Florida Supreme Court held that *Lopez-Mendoza* did not bar the exclusion of a police officer's post-stop observations of the defendant as driver of the vehicle. In that case, the defendant was stopped illegally by the police, who then learned that his license was

suspended. *Id.* at 85. The State conceded the illegality of the stop but argued that *Lopez-Mendoza* required that the trial court allow evidence obtained from the stop. *Id.* at 85-86. The Florida Supreme Court held that *Lopez-Mendoza* did not stand for the proposition that identity-related evidence was *per se* admissible over a fourth amendment objection. *Id.* at 87. The court noted that the cases cited in *Lopez-Mendoza* involved jurisdictional rather than evidentiary objections. *Id.* Further, the court observed that Lopez-Mendoza's objection to jurisdiction was treated differently by the Supreme Court than the evidentiary objection of Sandoval-Sanchez. *Id.* After finding that *Lopez-Mendoza* does not create a new category of unsuppressible evidence, the Florida Supreme Court held that "the evidence required to prosecute the charge of driving with a suspended license came directly from the exploitation of the unlawful stop" and that, therefore, the "officer's post-stop observation of the defendant behind the wheel must be suppressed." *Id.* at 88-89.

¶ 37    We find this analysis persuasive and, like the Florida Supreme Court, we hold that *Lopez-Mendoza*'s "body or identity" language applies only to personal jurisdiction, not to the suppression of identifying evidence. For the same reasons as those presented in *Perkins*, Officer Martinez's post-stop observation that defendant was driving the black Expedition must be suppressed. Because that observation was not made until "after [Officer Martinez] pulled over the vehicle," it is in no way attenuated from the illegal stop and is therefore suppressible. See *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) (holding that evidence need not be suppressed if it was obtained "by means sufficiently distinguishable to be purged of the primary taint" of illegality (internal quotation marks omitted)). Officer Martinez did not observe defendant driving or in control of a motor vehicle until immediately after he performed an illegal traffic stop. Therefore, the circuit court erred in denying defendant's motion to quash arrest and suppress evidence.

¶ 38    One of the elements of DWLS is that the accused "drives or is in actual physical control of a motor vehicle on any highway of this State." 625 ILCS 5/6-303(a) (West 2014). The only evidence presented that defendant was driving or in actual physical control of a motor vehicle was Officer Martinez's testimony that he observed the defendant to be an "occupant of [the] vehicle."[4] Because defendant could not have been convicted without the evidence that should have been suppressed, we reverse his conviction. See *People v. Green*, 358 Ill. App. 3d 456, 464 (2005).

¶ 39                                    CONCLUSION
¶ 40    Accordingly, we reverse the judgment of the circuit court.

¶ 41    Reversed.

---

[4]We note that Officer Martinez did not explicitly testify that defendant was driving or operating a motor vehicle. He did not testify that he observed defendant while driving, or even that he observed defendant in the driver's seat of the stopped Expedition. Rather, he testified that he "[found] that there was an occupant of [the] vehicle," and that the "occupant of that vehicle was Mr. Jose Lopez."