**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190276-U

Order filed April 4, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Grundy County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0276 Circuit No. 17-CF-225 |
| | ) | |
| TIFFANY A. MARKLEY, | ) ) | Honorable Lance R. Peterson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Presiding Justice O'Brien and Justice Hauptman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The court did not err by denying defendant's motion to suppress.

¶ 2    Defendant, Tiffany A. Markley, appeals her conviction for unlawful possession of a controlled substance. Defendant argues that the Grundy County circuit court erred by denying her motion to suppress because the officer impermissibly prolonged the traffic stop. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The State charged defendant with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)). The charges stem from a traffic stop, during which officers found tramadol in defendant's possession. Defendant moved to suppress the evidence on the basis that the traffic stop was impermissibly prolonged.

¶ 5    At the hearing on the motion to suppress, the State called Deputy Aaron Corey to testify. On November 3, 2017, at approximately 9:36 p.m., Corey received "a report about a blue Mitsubishi Lancer that was all over the road." The call "was a statewide radio for *** a possible DUI on Interstate 80" and the description was that the vehicle was driving shoulder to shoulder. Corey located the vehicle but did not observe any moving violations. However, dispatch informed him that the vehicle's registration was expired. Corey conducted a traffic stop and approached the vehicle on the passenger side to speak with the driver, defendant.

¶ 6    Corey explained why he stopped defendant, and she stated she knew she was weaving but it was because she was tired. At that time, Corey observed no objective signs supporting defendant's assertion that she was tired. He was not able to clearly see how defendant's eyes were from speaking with her at the passenger side of the vehicle. Corey asked for defendant's license and insurance, and she only provided her license.

¶ 7    Corey returned to his vehicle and Deputy Devin Brandt arrived. Corey was not able to determine whether defendant was impaired from his quick interaction at her passenger-side window prior to returning to his vehicle. Corey ran defendant's information and began writing a citation for operating an uninsured vehicle. After writing the citation, Corey returned to defendant's vehicle and requested that she step out to speak with him at the rear of her vehicle. He did so to have further conversation and explain the citation. Defendant denied having been drinking or being under the influence of medication. Corey did not smell alcohol but was concerned about

2

defendant possibly being under the influence of medication or other drugs. He performed the horizontal gaze nystagmus (HGN) test in an attempt to verify if she was under the influence. Through that test he was able to eliminate three substances.

¶ 8        After completing the HGN test, Corey asked defendant if there was anything that would be of concern to him in the vehicle and asked for consent to search. Corey explained that it is his procedure to request consent to search to see if there is anything to confirm or deny his suspicion of impairment. Defendant declined. Corey, who is with the canine unit and had his canine with him, informed defendant he was going to perform a free-air sniff of the vehicle and again asked if defendant had anything in the vehicle. Defendant admitted she had tramadol pills in the vehicle, and she did not have a prescription for them. Corey searched the vehicle and located the pills. Corey did not conduct any further field sobriety tests because once defendant admitted to possessing the pills and he found them, he had cause to arrest her. He would have done other field sobriety tests at the jail if he deemed it necessary. At the time he started discussing with defendant whether she had anything in the vehicle, he had not completed his investigation into her impairment. Had defendant not admitted to possessing the pills, Corey would have conducted the free-air sniff while Brandt would have continued with the impairment investigation and conducted field sobriety tests. During the stop, Corey addressed three issues: (1) expired registration; (2) no proof of insurance; and (3) potential impairment.

¶ 9        A recording of the traffic stop was admitted into evidence. It shows that approximately 10½ minutes pass from the time Corey approaches defendant's vehicle until she admits to possessing the pills. From the time Corey returns to the vehicle after writing the insurance-related citation, to the time defendant admits to possessing the pills, approximately 3½ minutes pass, and approximately 1½ of those minutes consisted of Corey administering the HGN test. The first

3

minute consists of defendant exiting her vehicle, walking, and Corey explaining the citation. Less than a minute passes from the time Corey finishes conducting the HGN test until defendant admits to the pills.

¶ 10	The recording shows Corey advise defendant that he stopped her due to an expired registration. Additionally, he tells defendant "and then you also got called in, that semi that was right behind ya, yeah he said you were all over the road."

¶ 11	Additionally, the recording captures the conversation between Corey and Brandt while Corey is in his vehicle writing the citation. Corey states that defendant said she was falling asleep, but he does not know—he can tell she is tired, but he cannot tell if she is simply tired or under the influence. Later, Corey asks Brandt if he can tell what defendant is doing and if she is sleeping. Brandt notes that defendant's head keeps laying back and that if he was tired, he was pretty sure this situation would wake him up.

¶ 12	The court denied the motion, and the matter proceeded to a stipulated bench trial. The court found defendant guilty. The court imposed the sentence agreed to by the parties, 24 months of probation. Defendant appeals.

¶ 13	II. ANALYSIS

¶ 14	Defendant argues that the court erred by denying her motion to suppress because the stop was impermissibly prolonged and should have ended when Corey issued the citation for operating an uninsured vehicle. Alternatively, if Corey had grounds to conduct the HGN test, he impermissibly extended the stop when he told defendant he intended to conduct a free-air sniff.

¶ 15	We apply a two-part standard of review to a circuit court's decision on a motion to suppress. *People v. Timmsen*, 2016 IL 118181, ¶ 11. The court's factual findings are upheld unless

they are against the manifest weight of the evidence, but we review *de novo*, the legal conclusion as to whether suppression is warranted. *Id.*

¶ 16    Pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may conduct a brief, investigatory stop of a person if the officer has a reasonable, articulable suspicion of criminal activity. *Timmsen*, 2016 IL 118181, ¶ 9. The "[f]acts giving rise to reasonable suspicion need not be based on personal observations by an officer" and can "be based on information that the public provides." *People v. Topor*, 2017 IL App (2d) 160119, ¶ 16. "A tip from an anonymous person may supply the requisite quantum of suspicion to conduct a *Terry* stop, provided the information bears some indicia of reliability." *People v. Henderson*, 2013 IL 114040, ¶ 26. "Factors to consider when evaluating the reliability of a tip include (1) whether the tip provides a sufficient quantity of information so that the officer may be certain that the stopped individual is the one the tipster identified; (2) the time interval between the officer receiving the tip and locating the suspect; (3) whether the tip is based upon contemporaneous eyewitness observations; (4) whether the tip is sufficiently detailed to permit the reasonable inference that the tipster has actually witnessed a crime; and (5) whether the tip was made to a police emergency number." *People v. Eyler*, 2019 IL App (4th) 170064, ¶ 30. Even though it may initially be lawful, "a traffic stop may become unreasonable if it is prolonged beyond the time reasonably required to satisfy its initial purpose." *People v. Reedy*, 2015 IL App (3d) 130955, ¶ 25. "The duration of a traffic stop is analyzed under the totality of the circumstances approach, which considers the brevity of the stop and whether the police acted diligently during the stop." *People v. Pulido*, 2017 IL App (3d) 150215, ¶ 39.

¶ 17    Here, defendant does not dispute that Corey's stop of her vehicle was proper based upon her expired registration. Additionally, the stop was a proper *Terry* stop based upon the tip that defendant's vehicle was "all over the road" and driving shoulder to shoulder. The tip appears to

have come in through an emergency police number, as Corey received the call through a statewide radio communication and indicated to defendant that a semi driver had called in the tip. Further, the tip originated from an eyewitness, as Corey informed defendant that he received a call from an individual reporting that a vehicle that matched the description of defendant's vehicle was all over the road. The description of the vehicle being all over the road and driving shoulder to shoulder is sufficient indicia of impaired driving. See *People v. Lopez*, 2018 IL App (1st) 153331, ¶ 19 (noting that the United States Supreme Court in *Navarette v. California*, 572 U.S. 393, 402 (2014), found that certain behaviors, such as "weaving all over the roadway" are indicative of drunk driving). Based on these circumstances, the tip relaying suspicions of impaired driving provided Corey with a basis, distinct from the expired registration, to lawfully stop defendant. See, *e.g.*, *Navarette*, 572 U.S. at 402 (noting that a reliable tip alleging dangerous behaviors indicative of impaired driving "generally would justify a traffic stop"); *City of East Peoria v. Palmer*, 2012 IL App (3d) 110904, ¶ 44 (recognizing "the significant body of case law that provides for a less stringent reliability analysis when the tip informs the police of a suspected drunk driver").

¶ 18        As Corey had two separate bases for conducting the stop of defendant, we must determine whether the stop was impermissibly prolonged past the time reasonably required to investigate or otherwise handle both of these investigations. It is clear that Corey had not completed his investigation into defendant's potential impairment at the time he finished addressing the lack of insurance and expired registration and therefore, had not satisfied one of the initial purposes of the stop. See *Reedy*, 2015 IL App (3d) 130955, ¶ 25. In addition to the tip that defendant's vehicle was driving shoulder to shoulder, defendant admitted to weaving. Although she gave the innocent explanation that she was tired, Corey need not take her at her word and the potential innocent explanation did not negate his reasonable suspicion. See, *e.g.*, *People v. Thomas*, 2019 IL App

6

(1st) 170474, ¶ 19 (providing that the fact that defendant's conduct "is susceptible to an innocent explanation does not vitiate the officer's right to detain that individual to resolve any ambiguity"). The recording shows that Corey questioned whether defendant was simply tired or under the influence and observations by Corey and Brandt—defendant appearing as if she was sleeping and defendant's head laying back—along with the reported weaving made it reasonable for Corey to continue investigating potential impairment after writing the insurance citation. Additionally, from the time Corey finished handling the expired registration and lack of insurance issues, and began focusing almost exclusively on the impairment issue, only about 2½ minutes passed before defendant admitted to possessing the pills. This slight delay is not unreasonable considering the imminent danger involved in cases of impaired driving. See *People v. Shafer*, 372 Ill. App. 3d 1044, 1052 (2007) ("An intoxicated person behind the wheel of a car presents an imminent danger to the public that is difficult to thwart by means other than a *Terry* stop."). This is especially so considering that about 1½ of those minutes consisted solely of the HGN test, such that beyond the HGN test, Corey only spent approximately another 40-50 seconds asking for consent and explaining that he was going to conduct the free-air sniff before defendant admitted to possessing the pills. Corey's indication that he intended to conduct a free-air sniff also was not a delay tactic, as Corey's canine was on scene and Brandt was available to continue the impairment investigation while Corey conducted the sniff. *Cf. People v. McQuown*, 407 Ill. App. 3d 1138, 1145 (2011) (finding a traffic stop unduly prolonged where the "business portion" of the stop was resolved after 10 minutes but the officer did not call for the "canine unit until 13 minutes after the initial purpose of the stop had ended" and "the canine unit did not arrive until 25 minutes later").

¶ 19　　　Defendant argues Corey's investigation of her impairment beyond the HGN test impermissibly prolonged the stop. However, the HGN test only indicates intoxication resulting

7

from three substances and therefore, Corey was justified in briefly continuing his investigation. Based on these circumstances, we cannot say that Corey impermissibly prolonged his stop of defendant. The court did not err in denying defendant's motion to suppress.

¶ 20                                      III. CONCLUSION

¶ 21            For the foregoing reasons, we affirm the judgment of the circuit court of Grundy County.

¶ 22            Affirmed.